## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

KELLY LIBBY & HOOPES, P.C.
and
GREENBERG TRAURIG LLP,

Plaintiffs,

vs.

ULICO CASUALTY COMPANY

Defendant.

05 - 11859 DPW

Civil Action No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

MAGISTRATE JUDGE Alexander

RECEIPT #
AMOUNT $ 250
SUMMONS ISSUED ✓
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 9|14|05

### INTRODUCTION

1.     This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel and violations of Mass. G.L. c. 93A and Mass. G.L. c. 176D.  Plaintiffs seek to recover damages, multiplied under Mass. G.L. c.93A, costs, and their reasonable attorneys' fees.

2.     Plaintiffs Kelly Libby & Hoopes, P.C. and Greenberg Traurig LLP (collectively "Plaintiffs or "Defense Counsel") seek damages for defendant Ulico Casualty Company's ("Ulico") improper refusal to pay the fees and expenses incurred by Plaintiffs in the investigation, defense, and settlement of a claim against Ulico's insureds, William Carnes ("Carnes") and George W. Cashman ("Cashman") (collectively the "Insured Trustees").

### PARTIES

3.     Plaintiff Kelly Libby & Hoopes, P.C. ("KLH") is a professional law corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts.

4.    Plaintiff Greenberg Traurig LLP ("Greenberg Traurig") is a limited liability law partnership organized and existing under the laws of the State of New York and registered to do business in Massachusetts.

5.    Defendant Ulico Casualty Company ("Ulico") is a Delaware corporation with its principal place of business in Washington, District of Columbia. Ulico is licensed to transact and does transact the business of insurance in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

6.    Jurisdiction is based upon 28 U.S.C. § 1332 because the amount of controversy exceeds $75,000 and the controversy is between citizens of different states.

7.    Venue is proper under 28 U.S.C. § 1391(a)(2) and (3), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendant Ulico Casualty Company is subject to personal jurisdiction in this district.

## BACKGROUND FACTS

### The Insurance Policy

8.    Ulico sold a "Trustee and Fiduciary Liability Policy", Policy Number FLP-1801948 with a $3 million limit of liability to Teamsters Union 25 Health Services and Insurance Plan ("Teamsters 25 HSIP") and TeamstersCare Staff 401(k) Plan for the period January 1, 2002 through January 1, 2003 (the "Insurance Policy"). A true and correct copy the Insurance Policy, as drafted and sold by Ulico, is attached hereto as Exhibit "A".

9.    In their capacities as Trustees of Teamsters 25 HSIP, Cashman and Carnes were insureds under the Insurance Policy. In consideration of the payment of premium, Ulico promised to pay, on behalf of the insureds, all money which the insureds became legally obligated to pay as a result of a claim made against the insureds during the policy period,

-2-

including but not limited to the fees and expenses incurred in the investigation, defense, settlement and appeal of such a claim. Specifically, the Insurance Policy states,

> Ulico shall pay on behalf of the **insured** all **loss** for which the **insured** becomes legally obligated to pay resulting from any **claim** first made against the **insured** during the **policy period** or the **extended reporting period** (if applicable) which results from a **wrongful act**.

10.     The Insurance Policy defines "wrongful act" as including "any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the insured, either jointly or severally, in the discharge of fiduciary duties, responsibilities or obligation as imposed upon fiduciaries of any trust or plan by ERISA."

11.     The Insurance Policy defines "loss" as including "money, including, but not limited to, damages, judgments, settlements, costs, prejudgment and post judgment interest, which any insured shall become legally obligated to pay as a result of a claim. Loss also means **claims expenses** incurred in the investigation, defense, settlement and appeal of a claim."

12.     The Insurance Policy defines "claims expenses" (referred to herein as "Defense Costs") as including "that part of **loss** consisting of reasonable and necessary fees and expenses incurred in the investigation, defense, settlement and appeal of a **claim**, including the premium for appeal bonds regarding such **claim**".

13.     Under the terms and conditions of the Insurance Policy, Ulico promised to advance and pay the Insured Trustees' selected defense counsel's Defense Costs.

### The Underlying Action

14.     On January 17, 2002 a federal grand jury indictment was returned against Cashman and Carnes in their capacities as trustees of Teamsters 25 HSIP, and a number of other defendants. The Indictment was titled United States of America v. Carnes et al. Crim. Case No. 02-10015-DPW, D. Mass ("the Indictment").

- 3 -

15. The Indictment included counts against Cashman and Carnes, alleging that Cashman and Carnes had committed various wrongful acts in their capacity as Trustees of Teamsters 25 HSIP. The Indictment also included counts against Cashman in his capacity as a trustee of another plan.

16. Under the terms of the Insurance Policy, the Indictment constituted a claim ("the Claim") first made against the Insured Trustees during the policy period resulting from a Wrongful Act.

### Ulico's Acceptance Of The Claim

17. On or about April 1, 2002 notice of the Claim was provided to Ulico on behalf of the Insured Trustees. At the same time, in accordance with the rights granted under the Insurance Policy, the Insured Trustees requested that Ulico consent to the retention of Paul V. Kelly ("Kelly"), an attorney at KLH, to represent Carnes and A. John Pappalardo ("Pappalardo"), an attorney at Greenberg Traurig, to represent Cashman. Notice of the Claim was also provided under the fiduciary liability policy issued to the other plan under which Cashman was an insured in his capacity as a trustee of that plan.

18. On or about April 22, 2002 Ulico acknowledged receipt of the notice of Claim and advised the Insured Trustees that the matter had been forwarded to the attention of Ulico's claims representative, Ross, Dixon & Bell LLP ("Ross Dixon") and that any questions regarding the Claim and any additional information should be directed to Ross Dixon.

19. In a May 21, 2002 letter Ross Dixon confirmed that it was Ulico's claims representative and stated that it appeared that coverage existed for Ulico the Insured Trustees' Defense Costs incurred in connection with the defense of the Indictment relating to Teamsters 25 HSIP. Ross Dixon also requested Defense Costs incurred to date for which reimbursement

-4-

would be sought and requested a copy of the other insurance policy under which Cashman was an insured, all of which were timely provided to Ross Dixon by the Insured Trustees.

20.     In its May 21, 2002 letter Ross Dixon also stated that Ulico agreed to the retention of Defense Counsel and requested Defense Counsel's hourly rates. Ulico also provided a copy of Ulico's "Litigation Management Guidelines" and stated that "it is necessary for the Insured Trustees' defense counsel to follow these guidelines" in order for Ulico to pay Defense Counsel.

21.     The Litigation Management Guidelines set forth the terms and conditions of the agreement between Ulico and Defense Counsel and contained the conditions that Defense Counsel were obligated to satisfy in return for payment by Ulico, including but not limited to:

- The requirement that Defense Counsel have errors and omissions insurance;

- The requirement that Ulico be advised of any potential conflicts of interest;

- The condition that Ulico would only pay for one primary attorney with a minimum of five years experience;

- The requirement that Defense Counsel submit an evaluation report and budget for the litigation to Ulico at 60 day intervals;

- The requirement that Defense Counsel submit invoice statements directly to Ulico on a quarterly basis and that the invoices comply with Ulico's invoice statement requirements; and

- The requirement that Defense Counsel sign a copy of the Litigation Management Guidelines indicating their acceptance of Ulico's requirements.

22.     On or about May 23, 2002 Kelly of KLH signed and returned a copy of the Litigation Management Guidelines indicating KLH's acceptance of Ulico's requirements for Defense Counsel.

- 5 -

23. On or about May 23, 2002 Ulico confirmed its promise to pay KLH's Defense Costs in consideration for KLH's representation of Carnes.

24. In or about May 2003, Pappalardo of Greenberg Traurig contacted Ross Dixon and Ulico to negotiate different terms in light of concerns about the staffing and reporting requirements.

25. After coming to an agreement regarding the terms of Greenberg Traurig's representation of Cashman, in or about May 2003 Ulico promised to pay Greenberg Traurig in consideration for its representation of Cashman.

26. Ulico and Cashman's other insurer reached an agreement between themselves and without any input from the Insured Trustees or Defense Counsel, to allocate Cashman's Defense Costs on a 50/50 basis. Ulico acknowledged its responsibility to pay 100% of the Defense Costs charged by KLH in connection with their representation of Carnes where no other insurance was available.

27. After acceptance of Ulico's requirements and conditions and in reliance on Ulico's promise to pay the Defense Costs, Plaintiffs went forward with the representation and defense of the Claim.

28. At all relevant times, Defense Counsel reported to Ulico's claims representative, Ross Dixon (and later ShawPitman LLP ("ShawPitman"), and took direction and obtained approval from Ross Dixon and ShawPitman for the investigation and defense of the Claim and Defense Costs incurred.

29. At all relevant times Defense Counsel materially complied with all of Ulico's conditions and requirements, including but not limited to providing Ulico, through its

- 6 -

claims representative, with all requested reports regarding the status of the Claim and submitting regular invoices to Ulico for payment.

30. At all relevant times Ulico, through its claims representative, consented to and authorized Defense Counsel's actions including but not limited to authorizing specifically the retention and payment of a private investigator and a jury consultant.

31. At all relevant times, Ulico's payment of the Defense Counsel's invoices for the Defense Costs was not timely, despite Ross Dixon's timely approval of such invoices.

32. As of April 7, 2003, Ulico had paid $67,491.98 of Defense Costs directly to KLH and $93,089.75 of Defense Costs directly to Greenberg Traurig for their representation and defense of the Claim.

33. In April, 2003 through Defense Counsel the Insured Trustees commenced negotiations to settle the Claim. The settlement contemplated plea agreements by the Insured Trustees in connection with the Indictment in order to conclude the court process and avoid the risks associated with trials which were anticipated to take an extended number of weeks (if not months) followed by the prospect of protracted appeals, all of which would result in large continuing Defense Costs.

34. In April, 2003 Ulico notified the Insured Trustees and Defense Counsel that Ross Dixon had been replaced by ShawPitman as Ulico's claims representative.

35. In April, 2003, in accordance with Ulico's requirements and the requirements of the Insurance Policy, Defense Counsel informed ShawPitman of the settlement negotiations and possible plea agreements which were being contemplated as a part of the defense of the Claim.

36.    In a letter dated April 24, 2003, ShawPitman, as Ulico's claims representative, informed the Insured Trustees and Defense Counsel that a plea agreement would purportedly establish acts on the part of the Insured Trustees that would preclude coverage under Exclusion A.2 of the Insurance Policy and that Ulico would purportedly be entitled to seek the reimbursement of the Defense Costs advanced. Ulico further stated that it would forgo its purported right to seek reimbursement of Defense Costs advanced to date but that Ulico would not pay the outstanding Defense Costs, including Defense Counsel's billed but unpaid Defense Costs which had been incurred and approved by Ulico's claims representative.

37.    In its April 24, 2003 letter, ShawPitman also stated that, if the Insured Trustees decided to go forward with trial, rather than accept a government plea bargain, Ulico would continue to consider all bills submitted.

38.    Contrary to Ulico's assertion however, the Insurance Policy does not entitle Ulico to seek reimbursement of Defense Costs incurred or advanced prior to a judgment or final adjudication establishing a deliberately dishonest, fraudulent, or criminal act or willful violation of a statute. Exclusion A.2. of the Insurance Policy states:

> A. Ulico shall not be liable for **loss** on account of any **claim** made against an **insured** based upon, arising from, or in consequence of: . . .
> 2. Any deliberately dishonest, fraudulent or criminal acts or any willful violation of any statute or regulation by the **insured**; provided, however, that this exclusion shall not apply to such **claim**, or to Ulico's obligation to pay, reimburse or advance **claims expenses** regarding such **claim**, until a judgment or other final adjudication adverse to the **insured** shall establish such acts and/or violations;

39.    The terms and conditions of the Insurance Policy, as drafted by Ulico, and for which the insured paid a premium, clearly state that the exclusion does not apply to a claim until a judgment or other final adjudication adverse to the insured establishes such acts and/or

violations. Under well established law, a final adjudication or judgment of a criminal act occurs only upon sentencing. Therefore, Ulico is obligated to pay all Defense Costs incurred up to the time of sentencing in accordance with Ulico's promises to Plaintiffs.

40.     Despite numerous efforts explaining to Ulico and its newly assigned claims representative, ShawPitman LLP why their position was wrong, Ulico and its claims counsel refused to alter their position.

41.     At the time of Ulico's refusal to pay Defense Counsel's outstanding Defense Costs, KLH had a total of $141,629.25 of unpaid Defense Costs which had been billed to Ulico for the investigation and defense of the Claim against Carnes, through the end of April, 2003, in accordance with Ulico's authorization and Ulico's agreement with KLH. This amount included the portion of the expenses incurred for a private investigator and jury consultant whose retention Ulico had specifically authorized as being reasonable and necessary prior to Ulico's refusal to pay any further Defense Costs.

42.     At the time of Ulico's refusal to pay Defense Counsel's outstanding Defense Costs, Greenberg Traurig had a total of $439,002.12 of unpaid Defense Costs, which had been billed to Ulico for the investigation and defense of the Claim against Ulico's insured, Cashman, through the end of April, 2003, in accordance with Ulico's authorization and Ulico's agreement with Greenberg Traurig. This amount included the portion of the expenses incurred for a private investigator and jury consultant whose retention Ulico had specifically authorized as being reasonable and necessary prior to Ulico's refusal to pay any further Defense Costs.

43.     The 50% of Defense Costs which had been billed to the other insurer was paid in full to Greenberg Traurig in accordance with the agreement for the two insurers to split the Defense Costs on a 50/50 basis.

- 9 -

44.     On April 25, 2003 Cashman pled guilty to two counts in a superseding information and Carnes pled guilty to two counts in a superseding indictment as part of plea agreements entered into by the Insured Trustees to settle the Claim against them.

45.     On August 7, 2003 Carnes was sentenced. On October 17, 2003 Cashman was sentenced.

46.     Between the April 25, 2003 guilty plea and Carnes' August 7, 2003 sentencing KLH incurred additional Defense Costs of $19,285.47 in connection with its representation of Carnes.

47.     Between the April 25, 2003 guilty plea and Cashman's October 17, 2003 sentencing Greenberg Traurig incurred additional Defense Costs of $171,516.14 in connection with its representation of Cashman.

48.     Despite repeated requests, Ulico has refused to honor its promises and obligation to pay Defense Counsel's Defense Costs in accordance with the Insurance Policy, and Ulico's agreement with and promises to Defense Counsel.

## COUNT I
### (Breach of Contract)

49.     Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 48.

50.     A binding contract existed between KLH and Greenberg Traurig on the one hand, and Ulico on the other.

51.     Ulico offered to pay Plaintiffs in consideration for Plaintiffs' representation of the Insured Trustees and Plaintiffs' agreement to abide certain the terms and conditions.

52.    Plaintiffs accepted Ulico's offer and have complied with all terms and conditions of their agreement with Ulico.

53.    By refusing to pay Plaintiffs' Defense Costs in connection with Plaintiffs' representation of the Insured Trustees, Ulico breached its contract with Plaintiffs.

54.    Plaintiffs have suffered injuries and damages by reason of Ulico's breach of contract, including but not limited to the Defense Costs incurred in connection with the representation of the Insured Trustees.

## COUNT II

### (Breach of Contract as Third Party Beneficiaries)

55.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 54.

56.    Plaintiffs are third-party beneficiaries to the Insurance Policy between the Insured Trustees and Ulico.

57.    The Insurance Policy contemplates the future existence of a duty to pay Plaintiffs.

58.    Under the Insurance Policy, Ulico undertook to pay the Insured Trustees' Defense Costs.

59.    The parties to the Insurance Policy intended that Ulico would pay the Insured Trustees' Defense Costs directly to Defense Counsel.

60.    At the time of contracting, the parties to the Insurance Policy intended that as part of Ulico's obligations under the Insurance Policy, Ulico would pay Plaintiffs for services rendered to the Insured Trustees. Plaintiffs were intended beneficiaries of the Insurance Policy.

61.     Ulico has breached its obligation to pay Plaintiffs under the terms of the

Insurance Policy.

62.     By refusing to pay Plaintiffs' Defense Costs in connection with their

representation of the Insured Trustees, Ulico breached its obligations to Plaintiffs as third-party

beneficiaries of the Insurance Policy.

63.     Plaintiffs have suffered injuries and damages by reason of Ulico's breach,

including but not limited to the Defense Costs incurred in connection with the representation of

the Insured Trustees.

## COUNT III

### (Breach of Implied Contract)

64.     Plaintiffs reallege and incorporate herein by reference the allegations

contained in paragraphs 1 through 63.

65.     An implied contract existed between Ulico and Plaintiffs.

66.     Plaintiffs conferred a benefit on Ulico by representing the Insured

Trustees.

67.     Ulico accepted and authorized the services of Plaintiffs with the

expectation that Ulico would compensate Plaintiffs for their representation of the Insured

Trustees.

68.     Plaintiffs represented the Insured Trustees with the reasonable expectation

of being paid for that representation by Ulico.

69.     Ulico breached its implied contract with Plaintiffs by refusing to pay

Plaintiffs for their representation of the Insured Trustees and Ulico was thereby unjustly

enriched.

70.    Plaintiffs have suffered injuries and damages by reason of Ulico's breach, including but not limited to the Defense Costs incurred in connection with Plaintiffs' representation of the Insured Trustees.

## COUNT IV

### (Promissory Estoppel)

71.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 70.

72.    Ulico authorized Plaintiffs to represent the Insured Trustees and promised to pay the Defense Costs in connection with that representation.

73.    Plaintiffs reasonably relied on Ulico's promise to pay Plaintiffs' costs and fees in connection with the Insured Trustees' representation.

74.    Ulico breached its promise to pay the Defense Costs incurred as a result of Plaintiffs' representation of the Insured Trustees.

75.    Plaintiffs have suffered injuries and damages by reason of Ulico's breach, including but not limited to the Defense Costs incurred in connection with Plaintiffs' representation of the Insured Trustees.

## COUNT V

### (Breach of Covenant and Duty of Good Faith and Fair Dealing)

76.    Plaintiffs reallege and incorporate herein by reference the allegations contained in paragraphs 1 through 75.

77.    The Insurance Policy, Ulico's agreement with Plaintiffs and Ulico's promise to pay the Defense Costs contain an implied covenant of good faith and fair dealing.

- 13 -

78.    By reason of the wrongful conduct alleged above, specifically Ulico's

failure to pay the Defense Costs, Ulico has breached this covenant of good faith and fair dealing.

79.    Plaintiffs are entitled to recover all damages resulting from such breach.

**COUNT VI**
**(Violation of Mass. G.L. c. 93A and 176D)**

80.    Plaintiffs reallege and incorporate herein by reference the allegations

contained in paragraphs 1 through 79.

81.    Ulico is engaged in trade or commerce within the meaning of Mass. G.L.

c. 93A.

82.    Ulico's refusal to pay Plaintiffs is unfair, deceptive, immoral, unethical,

oppressive, and/or unscrupulous and violates Mass. G.L. c.93A.

83.    Such unfair and deceptive acts and practices also constitute a violation of

Mass. G.L. c. 176D.

84.    Ulico's violations of Mass G.L. c.93A were willful and knowing.

85.    Ulico's violations of Mass G.L. c. 93A caused injury to Plaintiffs.

86.    Ulico is liable under Mass. G.L. c.93A §11 for multiple damages, costs

and reasonable attorneys' fees.

**WHEREFORE,** Plaintiffs seek judgment as follows:

i.   Damages for breach of contract, breach of implied contract and/or breach of
     contract as third party beneficiaries in an amount to be determined at trial;

ii.  Damages for promissory estoppel in an amount to be determined at trial;

- 14 -

iii.   Damages for breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial;

iv.   Multiple damages, pursuant to Mass. G.L. c.93A, §11;

v.   All of Plaintiffs' attorneys' fees and costs incurred in connection with their efforts to enforce their rights and in the prosecution of this action; and,

vi.   Such further relief that this Court deems just and proper.

JURY TRIAL DEMANDED AS TO ALL ISSUES SO TRIABLE.

KELLY LIBBY & HOOPES, P.C.
GREENBERG TRAURIG LLP,
By their attorneys

David Burgess (BBO# 553783)
37 Main Street
Concord, MA 07142-2529
Tel: (978) 371-1900
Fax: (978) 371-1144

William G. Passannante
Alex D. Hardiman
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone: 212-278-1471
Fax: 212-278-1733
Attorneys for Plaintiffs

Dated: September 13, 2005

EXHIBIT A

# ULICO CASUALTY COMPANY

# TRUSTEE AND FIDUCIARY LIABILITY INSURANCE POLICY

### IMPORTANT NOTICE:
### THIS IS A CLAIMS-MADE
### TRUSTEE AND FIDUCIARY LIABILITY POLICY

1. This policy does not become effective unless a **declarations** is issued to form a part of it.

2. This is a claims-made Trustee and Fiduciary Liability Insurance Policy. The coverage afforded by this policy is limited to liability for only those **claims** first made during the **policy period** specified on the **declarations** resulting from **wrongful acts** and which are subsequently reported to Ulico as soon as practicable.

3. This is a policy with **claims expenses** included in the Limits of Liability.

4. Please review this policy carefully and discuss the coverage with your lawyer, insurance advisor, agent or broker.

TFL-1001 (11/99)

# DECLARATIONS AND ENDORSEMENTS

# ULICO CASUALTY COMPANY
### 111 Massachusetts Avenue N.W.
### Washington, D.C. 20001
### (202) 682-0900

## TRUSTEE AND FIDUCIARY LIABILITY INSURANCE POLICY

# DECLARATIONS

**THIS IS A CLAIMS-MADE POLICY WITH CLAIMS EXPENSES INCLUDED IN THE LIMITS OF LIABILITY.**
**PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**Policy Number:**  FLP-1801948
**Renewal of Policy Number.**  FLP-1801359

| | | |
|---|---|---|
| **em 1.** | **Insurance Representative:** | The Segal Company |
| | **Address:** | One Park Avenue, 7th Flr.<br>New York, NY 10016 |
| **:em 2.** | **Trust or Plan:** | TEAMSTERS UNION 25 HEALTH SERVICES AND INSURANCE PLAN, TEAMSTERS CARE STAFF 401(K) PLAN |
| | **Address:** | 16 SEVER STREET<br>BOSTON, MA 02129 |
| **Item 3.** | **Policy Period:** | Effective Date: 1/1/01    Expiration Date: 1/1/02<br>12:01 a.m. Local Time both dates at the address stated in Item 2. |
| **tem 4.** | **Limits of Liability:** | A. Each Claim: $3,000,000.00  B. Aggregate: $3,000,000.00 |
| **:tem 5.** | **Deductible Amount:** | $0.00 Each Claim |
| **tem 6.** | **Premium:** | Basic Premium: $17,420.00<br>Waiver of Recourse Premium: $210.00<br>Other: $0.00<br>Total: $17,630.00 |
| **Item 7.** | **Endorsements:** | See Attached Endorsement Schedule |

These declarations together with the policy form TFL-1001 (11/99), the endorsements indicated in Item 7. above, if any, and the completed and signed application(s) with any submitted attachments complete the above numbered policy.

**Authorized Representative:** *[signature]*

**Date:**  Jan 11, 2001

# ENDORSEMENT SCHEDULE

**Trust or Plan:**          TEAMSTERS UNION 25 HEALTH SERVICES AND INSURANCE PLAN, TEAMSTERS CARE
                            STAFF 401(K) PLAN

**Policy Number:**          FLP-1801948

The following schedule lists all endorsements which form a part of the policy. It is only for reference and provides no
coverage. The actual endorsement should be reviewed to determine its effect on the coverage.


End No. / Ref No.      <u>Endorsement</u>

1. U01                 IRS Employee Plans Compliance Resolution System (Sublimit:$250,000.00)
2. U09                 Non-QPAM Managed Real Estate Exclusion
3. U10                 Non-QPAM Managed Investments Exclusion

U01
Issue Date: January 11, 2001
Policy Number: FLP-1801948
Trust or Plan: TEAMSTERS UNION 25 HEALTH SERVICES AND INSURANCE PLAN, TEAMSTERS CARE
STAFF 401(K) PLAN
Endorsement Number: 1
Endorsement Effective Date: January 1, 2001           (12:01 a.m. Local Time) .

### IRS Employee Plans Compliance Resolution System Endorsement

Ulico agrees that the above-numbered policy is amended as follows:

1.   Section IV, Exclusions, Item B.1. is amended by adding the following wording:

However, this exclusion shall not apply to sanctions, fines or penalties imposed pursuant to the Internal
Revenue Service's Closing Agreement Program ("CAP"), Voluntary Compliance Resolution Program
("VCR") or Tax Sheltered Annuity Voluntary Correction Program ("TVC").

2.   Section IX, Definitions, Item N. is amended by adding the following wording:

Loss also means any fines, penalties, sanctions, voluntary correction fee, compliance fee or user fee which
any insured becomes legally obligated to pay to correct defects of a trust or plan pursuant to a CAP, VCR
or TVC.

3.   Solely with respect to coverage extended pursuant to this endorsement, payment for loss is subject to the
following limits of liability:

Limits of liability:       $250,000.00      Each Claim
$250,000.00      Aggregate

These limits of liability along with any investigation, settlement, defense and negotiation expense are part
of, and not in addition to, the Limits of Liability stated in Item 4. of the declarations.

Nothing contained herein shall vary, alter or extend the terms, conditions and limitations of the policy except as
stated above.

This endorsement is part of the above-numbered policy and is effective as of the Endorsement Effective Date shown
above. It is not binding unless signed by an authorized representative of Ulico Casualty Company.

ULICO CASUALTY COMPANY

By _____
Authorized Representative

(11/99)



U09
Issue Date: January 11, 2001
Policy Number: FLP-1801948
    Trust or Plan: TEAMSTERS UNION 25 HEALTH SERVICES AND INSURANCE PLAN,
TEAMSTERS CARE STAFF 401(K) PLAN
Endorsement Number: 2
Endorsement Effective Date: January 1, 2001      (12:01 a.m. Local Time)

## Non-QPAM Managed Real Estate Exclusion Endorsement

Ulico agrees that Section IV., Exclusions, Part A. of the above-numbered policy is amended by adding the following:

Any investment in real estate, mortgages, mortgage notes, real estate investment trusts, or other interests, transactions or holdings in real estate or mortgages (collectively referred to as "real estate and/or mortgages") or any foundation, organization, transaction Trust, syndication, joint venture, partnership or corporation which makes, acquires or participates in real estate and/or mortgages unless such investments are:

1) In or by way of separate account as defined by Section 3(17) of ERISA, 29 U.S.C. S1002(17), which holds real estate and/or mortgages and which is sponsored by an insurance company qualified under the laws of more than one state to manage, acquire or dispose of any assets of a trust or plan, and has, as of the last day of its most recent fiscal year, net worth in excess of $1,000,000, and is subject to supervision and examination by a state authority having supervision over insurance companies; or

2) Specifically directed or approved by and managed by a Qualified Professional Asset Manager ("QPAM") as defined by Prohibited Transaction Class-Exemption 84-14 (March 8, 1984) issued by the U.S. Department of Labor, with substantial experience in real estate and/or mortgages, and which either does not violate the prohibited transaction provisions of Section 406(a) and (b) of ERISA, 29 U.S.C. S1106(a) and (b), or is exempted from those provisions; or

3) In or by way of an account, fund, pool or trust which invests in real estate and/or mortgages and is managed by a Qualified Professional Asset Manager ("QPAM") as defined by Prohibited Transaction Class-Exemption 84-14 (March 8, 1984) issued by the U.S. Department of Labor with substantial experience in real estate and/or mortgages, and which does not violate the Prohibited Transaction provisions of Section 406(a) and (b) of ERISA, 29 U.S.C. S1106(a) and (b); or

4) In or by way of guaranteed governmental mortgage pools, including Government National Mortgage Association (GNMA) Mortgage Pools, Federal National Mortgage Association (FNMA) Mortgage Pools and Federal Home Loan Mortgage Corporation (FHLMC) Mortgage Pools, or an account, fund, pool or trust which consists primarily of Certificates issued by a guaranteed mortgage pool; or

5) Specifically directed or approved and managed by N/A.

Nothing contained herein shall vary, alter or extend the terms, conditions and limitations of the policy except as stated above.

This endorsement is part of the above-numbered policy and is effective as of the Endorsement Effective Date shown above. It is not binding unless signed by an authorized representative of Ulico Casualty Company.

ULICO CASUALTY COMPANY

By _____
            Authorized Representative

(09/2000)



U10
Issue Date: January 11, 2001
Policy Number: FLP-1801948
Trust or Plan: TEAMSTERS UNION 25 HEALTH SERVICES AND INSURANCE PLAN, TEAMSTERS CARE
    STAFF 401(K) PLAN
Endorsement Number: 3
Endorsement Effective Date: January 1, 2001                    (12:01 a.m. Local Time)

## Non-QPAM Managed Investments Exclusion Endorsement

Ulico agrees that Section IV., Exclusions, Part A. of the above-numbered policy is amended by adding the following:

Any investments in other than U.S. Government securities or obligations which are federally
guaranteed, including FHA instruments, unless those investments are made by a Qualified
Professional Asset Manager ("QPAM") as defined by Prohibited Transaction Class-Exemption
84-14 (March 1984) issued by the U.S. Department of Labor.

Nothing contained herein shall vary; alter or extend the terms, conditions and limitations of the policy except as stated
above.

This endorsement is part of the above-numbered policy and is effective as of the Endorsement Effective Date shown
above. It is not binding unless signed by an authorized representative of Ulico Casualty Company.

ULICO CASUALTY COMPANY

By_____
            Authorized Representative

(09/2000)

# TABLE OF CONTENTS

**SECTION I**
Insuring Agreement .................................................. 1

**SECTION II**
Defense and Settlement .............................................. 1

**SECTION III**
Estates and Legal Representatives, Spousal Liability .............. 2

**SECTION IV**
Exclusions .......................................................... 2

**SECTION V**
Severability of Exclusions ......................................... 3

**SECTION VI**
Limits of Liability ................................................. 3

**SECTION VII**
Conditions .......................................................... 4

**SECTION VIII**
Extended Reporting Period Endorsement .............................. 8

**SECTION IX**
Definitions ......................................................... 8

i

## ULICO CASUALTY COMPANY
## TRUSTEE AND FIDUCIARY LIABILITY INSURANCE CLAIMS-MADE POLICY

Whenever the term **insured** is used in this policy, it refers to any person or organization qualifying as such in Definition L., Section IX. Whenever the terms "we," "us," "our" or "Ulico" are used in this policy, they refer to Ulico Casualty Company. There are other defined terms that are used throughout this policy. These terms appear in bold-face type and are defined in Section IX., Definitions.

In consideration of payment of premium and subject to the **declarations**, limitations, conditions, provisions and other terms of this policy, Ulico agrees as follows:

### SECTION I. INSURING AGREEMENT

Ulico shall pay on behalf of the **insured** all **loss** for which the **insured** becomes legally obligated to pay resulting from any **claim** first made against the **insured** during the **policy period** or the **extended reporting period** (if applicable) which results from a **wrongful act**.

### SECTION II. DEFENSE AND SETTLEMENT

The **insureds**, and not Ulico, shall have the duty to defend **claims** against them. Ulico will advance, excess of any applicable Deductible Amount, **claims expenses** for **claims** to which this policy provides coverage, subject to the **insureds'** agreement to repay such **claims expenses** in the event and to the extent that there is no coverage for such **claims** under this policy.

The **insured** shall have the right to select counsel to defend any covered **claim**, subject to the consent of Ulico, which shall not be unreasonably withheld, and subject to the selected counsel's agreement to comply with the litigation guidelines set forth by Ulico for the defense of covered **claims**. Ulico shall have the right and shall be given the opportunity, at any time, to effectively associate with the **insureds** in the investigation, defense and settlement of any **claim** covered by this policy, by giving notice to the **insured** of such election. Ulico's obligation to pay any **loss** shall cease upon exhaustion of the applicable Limit of Liability as set forth in Item 4. of the **declarations**.

Ulico may, with the written consent of the **insured**, make any settlement or compromise of a **claim** we deem appropriate. Such consent shall not be unreasonably withheld. If the **insured** withholds such consent to any settlement for any reason, our liability for all **loss** with respect to that **claim** shall not exceed the amount for which we could have settled such **claim** plus **claims expenses** accrued as of the date the **insured** refused to consent to settlement as recommended by Ulico, subject to the provision of Section VI., Limits of Liability.

The **insureds** shall not settle any **claim**, make any settlement offer, incur any **claims expenses** or otherwise assume any contractual obligation or admit any liability with respect to any **claim** without Ulico's written consent, which shall not be unreasonably withheld. Ulico shall not be liable for any settlement, **claims expenses**, assumed obligations or admissions to which it has not consented.

If both **loss** covered by this policy and **loss** not covered by this policy are incurred, either because a **claim** against an **insured** includes both covered and uncovered matters or because a **claim** is made against both an **insured** and others, the **insureds** and Ulico shall allocate such amount between covered **loss** and uncovered **loss** based upon the relative legal exposures of such parties to such matters.

1

## SECTION III.  ESTATES AND LEGAL REPRESENTATIVES, SPOUSAL LIABILITY

Subject to the limitations, conditions, provisions and other terms of this policy:

A.  Coverage shall extend to claims for the wrongful acts of insureds made against the estates, heirs, legal representatives or assigns of insureds who are deceased or against the legal representatives or assigns of insureds who are incompetent, insolvent or bankrupt;

B.  If a claim against an insured includes a claim against the lawful uninsured spouse of such insured solely by reason of such spouse's status as a spouse or such spouse's ownership interest in property which the claimant seeks as recovery for an alleged wrongful act of such insured, all loss which such spouse becomes legally obligated to pay on account of such claim shall be treated for purposes of this policy as loss which such insured becomes legally obligated to pay on account of a claim made against such insured.  All limitations, conditions, provisions and other terms of coverage applicable to such insured's loss shall also be applicable to such spousal loss.  However, coverage shall not apply to the extent any claim alleges any act or omission by such insured's spouse.

## SECTION IV.  EXCLUSIONS

A.  Ulico shall not be liable for loss on account of any claim made against an insured based upon, arising from, or in consequence of:

1.  Any fact, circumstance or situation, or demand, suit or other proceeding pending, or order, decree or judgment rendered against an insured, if written notice of such has been given under any policy prior to the effective date of this policy;

2.  Any deliberately dishonest, fraudulent or criminal acts or any willful violation of any statute or regulation by the insured; provided, however, that this exclusion shall not apply to such claim, or to Ulico's obligation to pay, reimburse or advance claims expenses regarding such claim, until a judgment or other final adjudication adverse to the insured shall establish such acts and/or violations;

3.  Any actual or alleged bodily injury, property damage or personal injury, except this exclusion shall not apply to claims asserting discrimination in violation of Section 510 of the Employee Retirement Income Security Act (ERISA) of 1974, as amended;

4.  The failure to collect from employers those contributions owed to the trust or plan, unless the failure is a result of the negligence of an insured;

5.  Any liability of others assumed by the insured under any contract or agreement, either oral or written, except to the extent that the insured would have been liable in the absence of the contract or agreement or unless the liability was assumed in accordance with or under the Agreement and Declaration of Trust pursuant to which the trust or plan were established;

6.  Any failure of the insured to comply with any law governing workers' compensation, unemployment, social security or disability benefits or any similar law, except the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985, as amended;

7.  Any demand, suit or other proceeding pending, or order, decree or judgment rendered against an insured on or prior to the effective date of coverage under the first fiduciary liability insurance claims-made policy issued to the insured by Ulico provided that similar and uninterrupted coverage has been in force with Ulico since that time; or from the same or substantially similar fact, circumstance or situation underlying or alleged therein;

2

8. Any insured having gained, in fact, any personal profit, remuneration or advantage to which such insured was not legally entitled, or for the return by the insured of any remuneration paid to or received by such insured if payment or receipt of such remuneration was in violation of law;

9. Any wrongful act of an insured seeking adjudication or determination of: (i) the eligibility or non-eligibility of any person or persons to receive benefits or participate in the trust or plan; or (ii) the receipt or non-receipt of benefits from the trust or plan by any person or persons;

10. Any benefits which have been paid or are payable under the term of a trust or plan unless and to the extent that: (i) the insured is a natural person and the benefits are payable by such insured solely as a personal obligation, and (ii) recovery for the benefits is based upon a covered wrongful act;

11. The actual or alleged or threatened discharge, release, seepage, escape or disposal of any hazardous or toxic waste, emissions or substance, including but not limited to pollution or contamination of any kind, and including but not limited to directions, requests or orders that an insured report, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any hazardous or toxic waste, emissions or substances; or

12. Nuclear radiation in any form, no matter how emitted.

B. Ulico shall not be liable for that part of loss, other than claims expenses:

1. Which constitutes punitive or exemplary damages, fines or penalties, or the multiple portion of any multiplied damage award, other than civil penalties imposed upon an insured as a fiduciary under Section 502 (c), (i) or (l) respectively, of ERISA;

2. For the return of any contributions to any employer if such amounts are or could be chargeable to the trust or plan;

3. As a result of a claim, or any portion thereof, seeking injunctive or equitable relief.

## SECTION V.  SEVERABILITY OF EXCLUSIONS

With respect to the Exclusions in Section IV. of this policy, no act or omission of one insured shall be imputed to any other insured for the purpose of determining the applicability of any exclusion, and the coverage otherwise afforded under this policy shall continue to apply to all insureds who did not commit, direct, approve, ratify or have knowledge of such act or omission.

## SECTION VI.  LIMITS OF LIABILITY

Regardless of the number of persons or entities bringing claims and regardless of the number of persons or entities who are insureds, Ulico's liability under this policy and any written endorsements hereto, except as expressly provided therein, is limited as follows:

## A.  "EACH CLAIM" LIMIT:

The "Each Claim" limit shown in Item 4.A. of the declarations is the maximum Ulico will pay as loss for any one claim. All claims arising out of the same wrongful act and all interrelated wrongful acts of any insured shall be deemed one claim, and such claim shall be deemed to have originated in the earliest policy period in which a claim is first made or deemed to have been first made against any insured alleging any such wrongful act or interrelated wrongful acts.

3

B.  "AGGREGATE" LIMiT:

The "Aggregate" Limit shown in Item 4.B. of the declarations is the total sum Ulico will pay for all claims first made during a single policy period.

C.  "DEDUCTIBLE AMOUNT":

The "Deductible Amount" shown in Item 5. of the declarations shall be deducted from all amounts, including claims expenses, paid by Ulico for each claim, and Ulico shall be liable only for sums in excess of such Deductible Amount.  Ulico may elect to pay all or part of the Deductible Amount to effect settlement of a claim and, upon notice of the action taken by Ulico, the insured shall promptly reimburse such part of the Deductible Amount as has been paid by Ulico.

## SECTION VII.  CONDITIONS

### A.  INSURED'S DUTIES IN THE EVENT OF A CLAIM, REPORTING AND NOTICE

The insureds shall, as a condition precedent to the application of all insurance afforded by this policy, give Ulico written notice as soon as practicable of any claim made against any of them for a wrongful act.

If during the policy period or extended reporting period (if applicable) an insured first becomes aware of any wrongful act which may subsequently give rise to a claim and gives written notice thereof as set forth herein to Ulico, then any claim subsequently made against the insured with regard to such wrongful act shall be deemed to have been made during the policy period or the extended reporting period in which the wrongful act was first reported to us.

The required written notices as stated above shall contain particulars sufficient to identify the insured, any claimant or potential claimant and full information with respect to the time, place and circumstances of the wrongful act which led to the claim, or which may subsequently give rise to a claim, including the names and addresses of persons or entities which may have or which claim to have suffered injury or loss, and of available witnesses.

The insureds shall, as a condition precedent to the application of all insurance afforded by this policy, give Ulico such information and cooperation as it may reasonably request.  The insureds shall, upon request, assist in making settlements and in defense of claims and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the insured because of an act or omission covered under this policy, shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses.  The insureds shall not prejudice Ulico's position or its potential or actual rights of recovery.

Notice to Ulico under this section shall be given in writing to:

> Claims Department
> Ulico Casualty Company
> 111 Massachusetts Avenue, N.W.
> Washington, D.C. 20001

4

## B.  SUBROGATION AND WAIVER OF RECOURSE

In the event of any payment under this policy, Ulico shall be subrogated to all of the insured's rights of recovery against any person or organization to the extent of such payment and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after an injury or loss to prejudice such rights.

If any premium for this policy is paid out of the assets of the trust or plan, then we shall have the right of recourse required by Section 401(b)(1) of ERISA, unless an insured, other than the trust or plan, has paid a waiver of recourse premium.

## C.  AUTHORIZATION

By acceptance of this policy, the insurance representative agrees to act on behalf of all insureds with respect to the giving and receiving of notice of claim, cancellation or non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the negotiation, agreement to and acceptance of endorsements, and all insureds agree that the insurance representative shall act on their behalf; provided, however, that nothing herein shall relieve the insureds, and each of them, from giving any notice to Ulico that is required under Condition A. above.

## D.  ACTION AGAINST ULICO

No action shall lie against Ulico unless, as a condition precedent thereto, there shall have been full compliance with all of the terms and conditions of this policy and not, except with respect to the duty to pay, reimburse or advance claims expenses, until the amount of the insured's obligation to pay shall have been finally determined whether by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and Ulico. No person or organization shall have any right under this policy to join us as a party to any action against an insured to determine the insured's liability, nor shall we be impleaded by the insured or the insured's legal representatives.

## E.  BANKRUPTCY OR INSOLVENCY

Bankruptcy or insolvency of the insured or insured's estate shall not relieve Ulico of any of its obligations hereunder nor deprive us of our rights under this policy.

## F.  REPRESENTATIONS AND SEVERABILITY

By acceptance of this policy the insured agrees that the statements in the application (hereby made part of this policy) are its representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the insured and Ulico, or any of its representatives, relating to this insurance.

Such written application for this policy shall be construed as a separate application for coverage by each insured. With respect to the statements contained in such written application for coverage, no statement in the application or knowledge possessed by any insured shall be imputed to any other insured for the purpose of determining the availability of coverage hereunder.

## G.  ASSIGNMENT AND TRANSFERS

This policy shall be void if assigned or transferred without Ulico's prior written consent by endorsement to this policy.

## H.  CHANGES

Notice to or knowledge possessed by any agent or other person acting on behalf of Ulico shall not effect a waiver or a change of any part of this policy or stop us from asserting any right under the terms of this policy, nor may the terms of this policy be waived or changed, except by **endorsement**.

## I.  PREMIUM

All premiums for this policy shall be computed in accordance with Ulico's rules, rates, premiums and minimum premiums applicable to the insurance afforded herein.

## J.  CANCELLATION

The **insured** can cancel this policy at any time.  Ulico has the same right.

1.  If the **insured** cancels:
    To cancel this policy, the **insured** must surrender the policy to Ulico or mail a written notice stating when thereafter it wishes the cancellation to take effect.  If the **insured** cancels prior to the **expiration date** of the current **policy period**, the **insured** shall be refunded any unearned premium computed at the customary short rates for early cancellation.

2.  If Ulico cancels:
    If Ulico cancels this policy, a written notice will be mailed to the address shown in Item 2. of the **declarations**.

    The date of cancellation shall be at least sixty (60) days from the date of written notice, unless cancellation is for non-payment of premium, in which event the date of cancellation will be at least ten (10) days from the date of the written notice.

    Ulico will refund any unearned premium computed on a pro rata basis.  However, the cancellation will be effective regardless of whether the **insured** has received the unearned premium.

## K.  NON-RENEWAL

The **insured** may non-renew this policy at the end of the **policy period**.  Ulico has the same right.

1.  If the **insured** non-renews:
    If the **insured** does not pay the renewal premium, or sends us written notice stating the intent not to renew the policy for the next **policy period**, the **insured** has non-renewed the policy.

2.  If Ulico non-renews:
    If Ulico non-renews the policy at the end of the **policy period**, a written notice will be sent out a minimum of sixty (60) days in advance to the address shown on the **declarations** or to the most current address the **insured** has provided in writing.

## L.  OTHER INSURANCE

This insurance shall apply only as excess insurance over, and shall not contribute with, any other valid and collectible insurance available to the **insured**, unless such other insurance is specifically in excess of this policy.

## M. COVERAGE TERRITORY

The insurance afforded by this policy applies anywhere in the world.

## N. VALUATION AND CURRENCY

All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in the Wall Street Journal on the date the final judgment is reached, the amount of settlement is agreed upon or any element of loss is due, respectively.

## O. CHANGES IN EXPOSURE

1. Merger, consolidation or assumption of **trust** or **plan:**

    a. If a **trust** or **plan** merges into or consolidates with another trust or plan not enumerated in Item 2. of the **declarations,** coverage under this policy for such **insureds** thereof who were **insureds** prior to such merger or consolidation shall continue until cancellation or non-renewal of this policy.

    b. If the responsibility for the administration or as a fiduciary of a **trust** or **plan** is fully assumed by another person or entity, coverage under this policy for **insureds** who were **insureds** prior to such assumption of responsibilities shall continue until cancellation or non-renewal of this policy but only with respect to **claims** for **wrongful acts** which occurred prior to such assumption of responsibilities.

    The **insured** shall give written notice to Ulico of such merger, consolidation or assumption of responsibilities as soon as practicable together with such information as we may require.

2. Termination of **trust** or **plan:**

    If a **trust** or **plan** terminates before the **expiration date** of this policy, coverage with respect to such terminated **trust** or **plan** shall continue until cancellation or non-renewal of this policy for those who were **insureds** at the time of such **trust** or **plan** termination with respect to actual or alleged **wrongful acts** occurring prior to or after the date of such **trust** or **plan** termination. The **insured** shall give written notice to Ulico of such termination as soon as practicable together with such information as we may require.

3. Amendment or modification of Agreement and Declaration of Trust:

    In the event that any amendment or modification is made to the Agreement and Declaration of Trust, a copy of such amendment or modification must be furnished to Ulico no later than ninety (90) days after such change was approved by the trustees of the **trust** or **plan** or the end of the **policy period,** whichever is earlier.

## P. TERMS OF POLICY CONFORM TO STATUTE

Terms of this policy which conflict with applicable statutes of the state where this policy is issued are hereby amended to conform to such statutes.

7

## SECTION VIII.  EXTENDED REPORTING PERIOD ENDORSEMENT

If this policy is non-renewed or is canceled by either the **insured** or Ulico, the **insured** shall have the right to purchase an **extended reporting period endorsement** provided that the **insured** is in compliance with all terms and conditions of the policy and all billed premiums have been paid.  The **extended reporting period endorsement** provides coverage on account of any **claim** first made against the **insured** during the **extended reporting period**, but only for **wrongful acts** occurring wholly prior to the non-renewal or cancellation date of this policy, and which are subsequently reported as soon as practicable but in no event more than thirty (30) days after the end of the **extended reporting period** specified in the **extended reporting period endorsement.**  Any **claim** made during the **extended reporting period** shall be deemed to have been made during the immediately preceding **policy period.**  Therefore, the **extended reporting period endorsement** shall not provide a new, additional or renewed "Aggregate" limit of liability.

This right to purchase this optional **endorsement** shall lapse unless Ulico receives the following:  (i) a written notice requesting an **extended reporting period endorsement** within ten (10) days following the non-renewal or cancellation date of this policy, and (ii) the payment of the additional premium for such coverage by the due date specified on the premium invoice.  The term of the **extended reporting period** is twelve (12) months.  Ulico reserves the right to approve a request for an **extended reporting period** exceeding twelve (12) months, but under no circumstances shall the **extended reporting period** exceed seventy-two (72) months.

The additional premium for the **extended reporting period endorsement** will be computed in accordance with the rules, rates and premiums in effect on the date of non-renewal or cancellation.  Upon payment of such additional premium, which shall be deemed fully earned and non-refundable, the **extended reporting period endorsement** will be issued.  The **extended reporting period endorsement** is not cancelable.

## SECTION IX.  DEFINITIONS

The following terms in bold-face type, when used in this policy, shall have the meanings set forth below:

A.  **Administration** means handling the records, effecting enrollment, and termination or cancellation of employees or participants with respect to benefits under a **trust** or **plan.**

B.  **Bodily Injury** means injury to the body, sickness, or disease sustained by a person, including death resulting from any of these at any time.  **Bodily injury** also means mental injury, mental anguish, mental tension, emotional distress, pain, suffering, or shock sustained by that person, as a result of such **bodily injury.**

C.  **Claim** means:

    1.  A written demand for monetary damages or injunctive or other equitable relief,

    2.  A civil proceeding commenced by the service of a complaint or similar pleading,

    3.  A criminal proceeding commenced by the return of an indictment, or

    4.  A formal administrative or regulatory investigation or proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against an **insured** for a **wrongful act**, including any appeal therefrom.

D. **Claims Expenses** means that part of loss consisting of reasonable and necessary fees and expenses incurred in the investigation, defense, settlement and appeal of a **claim**, including the premium for appeal bonds regarding such **claim**; but **claims expenses** shall not include salaries, wages, benefits or overhead of, or paid to, any **insured**.

E. **Declarations** means the document that validates the coverage available under this policy. The **declarations** shows the **trust** or **plan**, the policy number, the **policy period**, the Limits of Liability purchased, the Deductible Amount, the premium, and the **insurance representative**. This policy is not in effect unless a **declarations** signed by an authorized representative of Ulico has been issued.

F. **Effective Date** means the day this coverage begins at 12:01 a.m. Local Time in this **policy period**. This date is shown in Item 3. of the **declarations**.

G. **Endorsement** means a document signed by an authorized representative of Ulico that modifies the coverage provisions set forth in the policy. If the terms of any **endorsement** are inconsistent with the terms of this policy, the terms of the **endorsement** supersede the policy.

H. **Expiration Date** means the day this coverage ends at 12:01 a.m. Local time in this **policy period**. This date is shown in Item 3. of the **declarations**.

I. **Extended Reporting Period** means the period of time indicated in the **extended reporting period endorsement**. All dates are 12:01 a.m. Local Time.

J. **Extended Reporting Period Endorsement** is an endorsement which provides coverage on account of any **claim** first made against the **insured**, but only for **wrongful acts** occurring wholly prior to the non-renewal or cancellation date of this policy, and which are subsequently reported as soon as practicable but in no event more than thirty (30) days after the end of the **extended reporting period** shown on this **endorsement**.

K. **Insurance Representative** means the person or organization authorized to represent the **insured** and designated in Item 1. of the **declarations**.

L. **Insured** means any:

   1. **Trust** and **plan**;

   2. Natural person serving as past, present or future trustee of a **trust** or **plan**, while acting in his or her capacity as a fiduciary;

   3. Natural person serving as past, present or future employee of a **trust** or **plan**, while acting in his or her capacity as such; and

   4. Other natural person or organization designated as an additional **insured** by **endorsement** to this policy.

M. **Interrelated Wrongful Acts** means all **wrongful acts** which are based upon, directly or indirectly arising or resulting from, related to or are in consequence of, the same or a series of continuous or related facts, circumstances, situations, transactions or events.

N. **Loss** means money, including, but not limited to, damages, judgments, settlements, costs, prejudgment and post judgment interest, which any **insured** shall become legally obligated to pay as a result of a **claim**. **Loss** also means **claims expenses** incurred in the investigation, defense, settlement and appeal of a **claim**. **Loss** does not include matters uninsurable under the law pursuant to which this policy is construed.

9

O.  **Personal Injury** means injury arising out of one or more of the following offenses:

    1.  False arrest, detention or imprisonment, or malicious prosecution;

    2.  Abuse of process;

    3.  The publication or utterance of libel or slander or of other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right to privacy;

    4.  Wrongful entry or eviction, or other invasion of the right to private occupancy; or

    5.  Harassment, misconduct or discrimination of any nature arising out of any cause whatsoever, including, but not limited to, age, race, creed, color, sex, national origin, religion, disability, marital status or sexual orientation.

P.  **Plan** means those plans shown in Item 2. of the **declarations.**

Q.  **Policy Period** means the period of time between the effective date and **expiration** date shown in Item 3. of the declarations.  If the policy is canceled prior to the **expiration** date, the **policy period** is the period of time between the **effective date** and the cancellation date of this policy.

R.  **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality, or locality counterpart thereof.  Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapors, soot, fumes, acids, alkalis, chemicals or waste.  Waste includes materials to be recycled, reconditioned or reclaimed.  **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products and any noise.

S.  **Property Damage** means physical injury to, or destruction of tangible property, including loss of use thereof.

T.  **Trust** means those trusts shown in Item 2. of the **declarations.**

U.  **Wrongful Act** means:

    1.  Any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the **insured**, either jointly or severally, in the discharge of fiduciary duties, responsibilities or obligations as imposed upon fiduciaries of any **trust** or **plan** by ERISA or by COBRA, or by the common or statutory law of the United States of America, or any state or other jurisdiction anywhere in the world; or

    2.  Any negligent act, error or omission in the **administration** of any **trust** or **plan.**

IN WITNESS WHEREOF; Ulico Casualty Company has caused this policy to be signed by its Chairman and Assistant Secretary at Washington, District of Columbia, but this policy is not effective unless Ulico has issued a **declarations** as part of this policy.

_____
Chairman, President and Chief Executive Officer

_____
Assistant Secretary

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1.  Title of case (name of first party on each side only) ___Kelly Libby & Hoopes P.C. et al. v. Ulico Casualty Co.___

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

    | | | |
    |---|---|---|
    | [ ] | I. | 160, 410, 470, 535, R 23, REGARDLESS OF NATURE OF SUIT. |
    | [ ] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121 |
    | | | 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.           for patent, trademark or copyright cases |
    | [✓] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, |
    | | | 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, |
    | | | 380, 385, 450, 891. |
    | [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, |
    | | | 690, 810, 861-865, 870, 871, 875, 900. |
    | [ ] | V. | 150, 152, 153. |

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    United States of America v. William H. Carnes, 02-CR-10015-002-DPW

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]    NO [✓]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

    YES [ ]    NO [✓]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES [ ]    NO [✓]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]    NO [ ]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES [✓]    NO [ ]

    A.    If yes, in which division do all of the non-governmental parties reside?

    Eastern Division [✓]    Central Division [ ]    Western Division [ ]

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes, submit a separate sheet identifying the motions)

    YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   David Burgess, Esq., David Burgess & Associates

ADDRESS           37 Main Street, Concord, MA 01742-2529

TELEPHONE NO.     (978) 371-1900

(CategoryForm.wpd  - 5/2/05)

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a)   PLAINTIFFS**

KELLY LIBBY & HOOPES, P.C.; and GREENBERG TRAURIG LLP

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff   Suffolk, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Delaware
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David Burgess, Esq.; David Burgess & Associates; 37 Main Street,
Concord, MA 01741-2529. Tel: (978) 371-1900

Attorneys (If Known)

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☐ 3   Federal Question (U.S. Government Not a Party) |
| ☐ 2   U.S. Government Defendant | ☒ 4   Diversity (Indicate Citizenship of Parties in Item III) |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN**   (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332

Brief description of cause:
28 U.S.C. § 1332 - breach of contract & related causes of action

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S)
IF ANY**

(See instructions):

JUDGE   Hon. Douglas P. Woodlock

DOCKET NUMBER 02-CR-10015-DPW

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____