# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KELLY LIBBY & HOOPES, P.C., and GREENBERG TRAURIG LLP, | |
| Plaintiffs, | Civil Action No. 05-11859 (RCL) |
| vs. | |
| ULICO CASUALTY COMPANY, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ULICO CASUALTY COMPANY'S MOTION TO DISMISS

Lon A. Berk (BBO# 546835)
HUNTON & WILLIAMS
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102
Telephone:  703-714-7400
Facsimile:  703-918-4050
E-Mail:  lberk@hunton.com

*Attorney for Defendant,*
*Ulico Casualty Company*

*Of Counsel:*

Michael S. Levine (BBO# 633248)
Syed S. Ahmad
HUNTON & WILLIAMS
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102
Telephone:  703-714-7400
Facsimile:  703-918-4050

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..........................................................................................................1

II.   FACTUAL BACKGROUND .......................................................................................2

    A.    The Insurance Contract ....................................................................................2

    B.    The Underlying Claim.......................................................................................4

    C.    Responsibility For Outstanding Defense Fees..................................................6

III.  ARGUMENT.................................................................................................................6

    A.    Applicable Standard..........................................................................................6

    B.    Complete Relief Cannot Be Accorded Without The Absent Named Insureds
         And Messrs. Cashman And Carnes...................................................................7

    C.    The Absent Named Insureds And Messrs. Cashman And Carnes Also Are
         "Necessary" Because They Will Be Unable To Protect Their Interests In
         This Litigation................................................................................................ 10

         1.    The Absent Named Insureds And Messrs. Cashman And Carnes Have
               An Interest Relating To The Subject Of This Action.................................... 10

         2.    The Absent Named Insureds' Interests, Like Messrs. Cashman And
               Carnes' Interests, May Be Impaired Or Impeded. ........................................ 12

IV.   CONCLUSION............................................................................................................ 13

# TABLE OF AUTHORITIES

## CASES

*Acton Co. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76 (1st Cir. 1982)………..…………..7-14

*Brown v. America International Group, Inc.*, 339 F. Supp. 2d 336 (D. Mass. 2004) ....................8

*Home Insurance Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739 (7th Cir. 1998)..................................12

*Hoover v. Gershman Investment Corp.*, 774 F. Supp. 60 (D. Mass. 1991) ..................................12

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399 (3d Cir. 1993) ......................7

*Lambergs v. Total Health System, Inc.*, Civ. A. No. 88-0670-2, 1989 WL. 63243
(D. Mass, June 5, 1989) ...............................................................................................................7

*Lopez v. Arraras*, 606 F.2d 347 (1st Cir. 1979)..............................................................................8

*National Union Fire Insurance Co. of Pittsburgh, Pa. v. Mass. Municipal
Wholesale Electric Co.*, 117 F.R.D. 321 (D. Mass. 1987)..............................................................8

*Pujol v. Shearson America Express, Inc.*, 877 F.2d 132 (1st Cir. 1989)........................................8

*Raytheon Co. v. Continental Casualty Co.*, 123 F. Supp. 2d 22 (D. Mass 2000)...........................8

*Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629 (1st Cir. 1989) ............................................12

## I.    INTRODUCTION

Defendant Ulico Casualty Company ("Ulico") has moved pursuant to Fed. R. Civ. P.

12(b)(7) to dismiss the complaint of Plaintiffs Kelly Libby & Hoopes, P.C. ("KLH") and Greenberg

Traurig LLP ("Greenberg Traurig") for failure to join necessary parties.  KLH and Greenberg Traurig

(collectively, "Plaintiffs") seek to recover legal fees pursuant to a contract for trustee and fiduciary

liability insurance (the "Ulico Contract") that allegedly were earned when defending two individuals,

William Carnes and George Cashman.  Contending that Messrs. Carnes and Cashman were insured

under the Ulico Contract issued by Ulico to Teamsters Union 25 Health Services and Insurance Plan

("Teamsters 25 HSIP") and Teamsters Care Staff 401(k) Plan ("Teamsters Care"), KLH and

Greenberg Traurig are seeking to recover these legal fees from Ulico.  The lawsuit, however, does

not name as parties either Teamsters 25 HSIP or Teamsters Care (collectively, the "Absent Named

Insureds"), or Messrs. Cashman and Carnes.

Under the Ulico Contract, the Absent Named Insureds and/or Messrs. Cashman and Carnes,

are ultimately responsible for the legal fees.  The Ulico Contract provides that the insureds, not

Ulico, have the duty to defend claims.  Ulico's *only* defense obligation under the terms of the Ulico

Contract is to "advance" defense costs subject to the insureds' agreement to reimburse Ulico under

the circumstances present here.  Further, there is only an obligation to advance defense costs where

the Ulico Contract provides coverage for the claim.

As such, the Absent Named Insureds as well as Messrs. Cashman and Carnes have a financial

interest in the outcome of this litigation.[1]  Indeed, to the extent anyone bears ultimate responsibility

for the incurred legal fees, it is either the Absent Named Insureds or Messrs. Cashman and Carnes.

---

[1] Messrs. Carnes and Cashman also would be responsible for the incurred legal fees as recipients of the
services to which the fees relate.

Consequently, these entities and individuals are necessary parties within the meaning of Fed. R. Civ.

P. 19 for, among others, the following reasons:

- Complete adjudication of this litigation will determine the scope of coverage afforded under the Ulico Contract, and that determination in turn will impact the rights and obligations of the Absent Named Insureds and Messrs. Cashman and Carnes under the Ulico Contract, not only for the Underlying Claim, but for future claims as well;

- Without the Absent Named Insureds and Messrs. Cashman and Carnes, "complete relief" cannot be accorded in this proceeding because, should there be no coverage, Plaintiffs' only viable claim for payment lies directly against these absent individuals, and any subsequent litigation against those parties would necessarily involve the re-litigation of issues in this proceeding;

- The Absent Named Insureds are parties to the Ulico Contract and, therefore, to the extent the Underlying Claim is not covered, the Absent Named Insureds may be responsible for the incurred legal fees, thereby affording them an interest in the subject of this action that could be impaired or impeded in their absence; and

- Messrs. Cashman and Carnes actually received the legal services to which the incurred legal fees relate and, therefore, they would also be responsible for those fees should there be no coverage under the Ulico Contract, giving Messrs. Cashman and Carnes an even greater interest in the subject of this action.

Accordingly, as explained more fully below, this lawsuit should be dismissed pursuant to

Fed. R. Civ. P. 12(b)(7) for failure to join necessary parties.

## II.    FACTUAL BACKGROUND

### A.    The Insurance Contract

The Ulico Contract provides, subject to its terms, conditions and exclusions, claims-made

trustee and fiduciary liability insurance to the Teamsters 25 HSIP and Teamsters Care for the period

January 1, 2002 to January 1, 2003.  Although the Ulico Contract was entered into between Ulico

and the Absent Named Insureds, the Contract also affords coverage to other persons that qualify as

an "insured."  Specifically, the Ulico Contract provides:

L.    **Insured** means any:

---

1. **Trust** and **plan**;

2. Natural person serving as past, present or future trustee of a **trust** or **plan**, while acting in his or her capacity as a fiduciary;

3. Natural person serving as past, present or future employee of a **trust** or **plan**, while acting in his or her capacity as a fiduciary;

4. Other natural person or organization designated as an additional **insured** by **endorsement** to this policy.

Ahmad Aff. ¶ 3, Ex. 1, Section IX.L (emphasis in original). Messrs. Carnes and Cashman allegedly served as trustees of Teamsters 25 HSIP and, as such, would be insureds under this provision of the Ulico Contract. Compl. ¶ 9; Ahmad Aff. ¶ 3, Ex. 1, Section IX.L.2.

The Ulico Contract affords coverage for "loss" which results from a "wrongful act:"

Ulico shall pay on behalf of the **insured** all **loss** for which the **insured** becomes legally obligated to pay resulting from any **claim** first made against the **insured** during the **policy period** or the **extended reporting period** (if applicable) which results from a **wrongful act**.

Ahmad Aff. ¶ 3, Ex. 1, Section I (emphasis in original). "Loss" is defined under the Ulico Contract to include "claims expenses," such as defense fees. The Ulico Contract contains the following relevant definitions:

**Loss** means money, including, but not limited to, damages, judgments, settlements, costs, prejudgment and post judgment interest, which any insured shall become legally obligated to pay as a result of a **claim**. **Loss** also means **claims expenses** incurred in the investigation, defense, settlement and appeal of a **claim**. **Loss** does not include matters uninsurable under the law pursuant to which this policy is construed.

\*        \*        \*

**Claims Expenses** means that part of **loss** consisting of reasonable and necessary fees and expenses incurred in the investigation, defense, settlement and appeal of a **claim**, including the premium for appeal bonds regarding such **claim**; but **claims expenses** shall not include salaries, wages, benefits or overhead of, or paid to, any **insured**.

Ahmad Aff. ¶ 3, Ex. 1, Sections IX.N, IX.D (emphasis in original).

The Ulico Contract imposes a duty to defend on the insureds.  The Ulico Contract provides, however, that Ulico will "advance" claims expenses to the insureds.  But, that "advance" is subject to the insureds' agreement to reimburse Ulico where the defended claim is not covered:

> The **insureds**, and not Ulico, shall have the duty to defend **claims** against them.  Ulico will advance, excess of any applicable Deductible Amount, **claims expenses** for **claims** to which this policy provides coverage, subject to the **insureds'** agreement to repay such **claims expenses** in the event and to the extent that there is no coverage for such **claims** under this policy.

Ahmad Aff. ¶ 3, Ex. 1, Section II (emphasis in original).

Finally, the Ulico Contract contains certain exclusions that bar coverage for the claims alleged against Messrs. Cashman and Carnes:

> A.      Ulico shall not be liable for **loss** on account of any **claim** made against an **insured** based upon, arising from, or in consequence of:
>
> *        *        *
>
> 2.      Any deliberately dishonest, fraudulent or criminal acts or any willful violation of any statute or regulation by the **insured**; provided, however, that this exclusion shall not apply to such **claim**, or to Ulico's obligation to pay, reimburse or advance **claims expenses** regarding such claim, until a judgment or other final adjudication adverse to the **insured** shall establish such acts and/or violations;
>
> *        *        *
>
> 8.      Any **insured** having gained, in fact, any personal profit, remuneration or advantage to which such **insured** was not legally entitled, or for the return by the **insured** of any remuneration paid to or received by such **insured** if payment or receipt of such remuneration was in violation of law;

Ahmad Aff. ¶ 3, Ex. 1, Sections IV.A.2, IV.A.8 (emphasis in original).

**B.      The Underlying Claim**

On January 16, 2002, a federal grand jury indictment was returned against, among other defendants, Messrs. Carnes and Cashman in their capacities as trustees of Teamsters 25 HSIP (the

"Underlying Claim").[2]  Compl. ¶ 14.  The indictment asserted the following counts against the

defendants:

- One count of conspiracy;

- Nine counts of theft or embezzlement from the pension plan;

- Fifty six counts of false statements made in relation to documents required by the Employee Retirement Income Security Act ("ERISA");

- Forty nine counts of false statements and concealment of facts in relation to documents required by ERISA;

- Fifty six counts of mail fraud; and

- Eight counts for violation of the Taft-Hartley Act.

Ahmad Aff. ¶ 4, Ex. 2.

On or about April 1, 2002, Ulico was notified of the Underlying Claim.  Compl. ¶ 17.

Messrs. Carnes and Cashman sought Ulico's consent to the retention of Paul Kelly, an attorney at

KLH, to represent Mr. Carnes and A. John Pappalardo, an attorney at Greenberg Traurig, to represent

Mr. Cashman.  Compl. ¶ 17.  By letter dated May 21, 2002 from the law firm of Ross, Dixon & Bell

LLP, Ulico agreed to pay reasonable claims expenses in the defense of Messrs. Cashman and Carnes.

Compl. Ahmad Aff. ¶ 5, Ex. 3, pgs. 1, 2.

On April 25, 2003, as part of plea agreements, Mr. Cashman pled guilty to two counts in a

superseding information and Mr. Carnes pled guilty to two counts in a superseding indictment.

Compl. ¶ 44.  Mr. Carnes was sentenced on August 7, 2003.  Compl. ¶ 45.  On October 17, 2003, Mr.

Cashman was sentenced.  Compl. ¶ 45.

---

[2] The indictment also included counts against Mr. Cashman in his capacity as a trustee of another plan. Compl. ¶ 15.

C.    **Responsibility For Outstanding Defense Fees**

Ulico paid $67,491.98 to KLH for its defense of Mr. Carnes and $93,089.75 to Greenberg Traurig for its defense of Mr. Cashman.  Compl. ¶ 32.  Before making these payments, and in accordance with the terms of the Ulico Contract, Ulico expressly reserved its right to seek reimbursement from the insureds if it was subsequently determined that the Underlying Claim was not covered.  Ahmad Aff. ¶ 5, Ex. 3, pg. 3.

According to Plaintiffs, several hundreds of thousands of dollars in outstanding legal fees were incurred in the defense of Messrs. Carnes and Cashman.  Compl. ¶¶ 41, 42, 47.  These fees are not covered under the Ulico Contract because, among other reasons, the criminal acts exclusion and the personal profits exclusion bar coverage.  Consequently, Ulico does not bear ultimate responsibility for those amounts.  Rather, the fees are the ultimate responsibility of the Absent Named Insureds and/or Messrs. Cashman and Carnes.  Furthermore, to the extent that Ulico has already advanced certain fees to the Plaintiffs, those amounts are subject to reimbursement once it is established that there is no coverage for the Underlying Claim.  Ahmad Aff. ¶ 3, Ex. 1, Section II.

III.   **ARGUMENT**

A.    **Applicable Standard**

Rule 19 requires that an absent party, "whose joinder will not deprive the court jurisdiction over the subject matter of the action," shall be joined when:

(1)    in the person's absence, complete relief cannot be accorded among those already parties;

(2)    the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:

(i)    as a practical matter, impair or impede the person's ability to protect that interest or

(ii)    leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). Only one of these criteria need be shown to warrant dismissal under Rule 12(b)(7) of the Federal Rules of Civil Procedure. *Lambergs v. Total Health Sys., Inc.*, Civ. A. No. 88-0670-2, 1989 WL 63243, at *3 (D. Mass, June 5, 1989) ("the presence [of] *even one* … establishes that a person is a necessary party.") (emphasis added); *see also*, *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993) ("any party whose absence results in *either* subsections (a)(1) *or* (a)(2) is a party whose joinder is compulsory if feasible") (emphasis added).

In *Acton Co. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 78 (1st Cir. 1982), the First Circuit found:

> [Rule 19] furthers … the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them.

*Id*. Furthermore, application of Rule 19 is determined on a case-by-case basis. *Lopez v. Arraras*, 606 F.2d 347, 353 (1st Cir. 1979). The particular facts and circumstances of each case, therefore, are of significance. *Pujol v. Shearson Am. Express, Inc.*, 877 F.2d 132, 134 (1st Cir. 1989) ("[W]hen applying Rule 19(a), a court essentially will decide whether considerations of efficiency and fairness, growing of the particular circumstances of the case, require that a particular person be joined as a party."). Additionally, the court can consider evidence outside of the pleadings in ruling on a Rule 19 motion. *Raytheon Co. v. Continental Cas. Co.*, 123 F. Supp.2d 22, 32 (D. Mass 2000).

**B.    Complete Relief Cannot Be Accorded Without The Absent Named Insureds and Messrs. Cashman And Carnes.**

This Court cannot afford "complete relief" without the Absent Named Insureds and Messrs. Cashman and Carnes. *Acton*, 668 F.2d at 78; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mass. Mun. Wholesale Elec. Co.*, 117 F.R.D. 321, 323 (D. Mass. 1987). Despite a final determination in this litigation of the existing parties' respective rights and obligations under the Ulico Contract, the

Absent Named Insureds and Messrs. Cashman and Carnes would still be able to re-litigate those very same rights and obligations in a subsequent proceeding. Indeed, because the Ulico Contract is between Ulico and the Absent Named Insureds, with Messrs. Cashman and Carnes as insureds, if this Court finds that the Underlying Claim is not covered under the Ulico Contract, either the Absent Named Insureds and/or Messrs. Cashman and Carnes could still commence a separate lawsuit and attempt to obtain a separate decision to the contrary. [3] Consequently, the Absent Named Insureds and Messrs. Cashman and Carnes are necessary to complete adjudication of the issues in this litigation – their absence creating the potential for inconsistent judicial determinations. This Court should, therefore, dismiss this litigation for the Plaintiffs' failure to join the absent parties.

A party is necessary under Rule 19 if, in the party's absence, "complete relief cannot be accorded among those already parties…." Fed. R. Civ. P. 19(a)(1). According to the First Circuit, even the threat of an absent party bringing another lawsuit raising similar issues is enough to show that "complete relief" will not be afforded under Rule 19(a). *Acton*, 668 F.2d at 78. Messrs. Cashman and Carnes and the Absent Named Insureds meet this test.

In *Acton*, a parent company and a subsidiary agreed to purchase another company's assets. When the deal fell through, the subsidiary sued the seller, but without joining the parent company. The seller argued that the parent company was necessary under Rule 19. The First Circuit agreed,

---

[3] This district's decision in *Brown v. Am. Int'l Group, Inc.*, 339 F. Supp.2d 336 (D. Mass. 2004) is inapposite. In *Brown*, unlike here, the plaintiffs were insureds under the insurance contract at issue, and the pertinent issue before the court was whether other insureds also should be made parties to the suit. In contrast, here, not only are the Plaintiffs not parties to the Ulico Contract, but they are also not insureds. Indeed, the Plaintiffs here, unlike in *Brown*, have no privity to the Ulico Contract whatsoever. Additionally, *Brown* is inapposite because the language of the insurance contract in that case is substantially different from the Ulico Contract language at issue here. In *Brown*, the policy language expressly provided that each insured had an obligation to repay advanced payments by the insurer "*severally* according to their interests." *Brown*, 339 F. Supp.2d at 343 (emphasis added). The Ulico Contract, in contrast, contains no such limitation on each insured's obligations. Given these material differences between *Brown* and this case, the *Brown* court's conclusion that certain *other insureds* were unnecessary under Rule 19 is of no consequence here.

---

finding the parent company "would remain free to commence a new action" against the seller on claims that were similar to the subsidiary's claims. *Id.* The parent company's "presence is therefore desirable not only to avoid piecemeal and duplicative litigation, but also to provide complete relief" to the seller. *Id.*[4]

*Massachusetts Municipal* reached the same result under similar reasoning. In that case, an insurer sought to rescind an insurance contract. In addition to suing the insured, the insurer also sued Hull Municipal Lighting Plant ("HMLP"), whic h already was in litigation with the insured. HMLP sought dismissal under Rule 21 which permits dismissal under certain circumstances, unless the party would be necessary under Rule 19(a). In determining whether HMLP was a necessary party under Rule 19, the court noted that a ruling that the insurance contract at issue was void would not bind a non-party, such as HMLP, who could re-litigate the same issue in another court, thus rendering the declaratory judgment "of little use...." *Mass. Mun.*, 668 F.R.D at 323. Therefore, "failure to join HMLP as a party ... can render the judgment of this court hollow and ineffectual" and would violate one of the purposes of Rule 19, which is "the interest of parties in obtaining complete and effective relief in a single action." *Id.* at 322-23. Accordingly, the court ruled that HMLP was a necessary party to the case.

Here, Plaintiffs seek recovery from Ulico under the Ulico Contract. Therefore, Plaintiffs, who are not "insureds" under the Ulico Contract, necessarily seek an adjudication of the rights and obligations under the Ulico Contract. Indeed, to determine whether the legal fees are covered, this Court must interpret the scope of coverage under the Ulico Contract, since Ulico's obligations turn

---

[4] The court ultimately affirmed dismissal of the lawsuit because the parent company was also an indispensable party under Rule 19(b) but could not be joined without destroying diversity jurisdiction. *Acton*, 668 F.2d at 81-82.

on whether the Underlying Claim is covered.  Therefore, the reasoning of *Acton* and *Massachusetts Municipal* equally applies here.

The Absent Named Insureds and Messrs. Cashman and Carnes would be free to re-litigate the Ulico Contract's interpretation in another court if the findings from this Court are undesirable.  Ulico would then be required to defend itself in the separate lawsuit and re-litigate the very same issues to be litigated here.  This Court, therefore, stands to provide the incomplete relief contemplated by Rule 19 and disapproved in *Acton* and *Massachusetts Municipal*, with this Court's rulings to potentially become "hollow or ineffectual."  For this reason, the Absent Named Insureds and Messrs. Cashman and Carnes are necessary parties under Rule 19(a)(1).

      **C.**    **The Absent Named Insureds And Messrs. Cashman And Carnes Also Are "Necessary" Because They Will Be Unable To Protect Their Interests In This Litigation.**

The Absent Named Insureds and Messrs. Cashman and Carnes also are necessary parties under Rule 19 because they have an interest in the subject of this action given that they would likely be responsible for the legal fees Plaintiffs seek from Ulico, thus, requiring them to be joined under Rule 19.  Absent joinder in this litigation, the Absent Named Insureds and Messrs. Cashman and Carnes will be unable to protect their interests as they relate to the legal fees due Plaintiffs.

      **1.**    <u>**The Absent Named Insureds And Messrs. Cashman And Carnes Have An Interest Relating To The Subject Of This Action.**</u>

The subject of this action relates to the interests that the Absent Named Insureds and Messrs. Cashman and Carnes have in the Ulico Contract and in this litigation.  Under Rule 19, a party is necessary if it has "an interest relating to the subject of the action and is so situated that the disposition of the action in the [party's] absence may … as a practical matter, impair or impede the person's ability to protect that interest…."  Fed. R. Civ. P. 19(a)(2)(i).  *See Acton*, 668 F.2d at 78.  In *Acton*, a parent company and a subsidiary attempted to purchase another company's assets.  The purchase agreement signed by the parent company provided that the $250,000 deposit would be

returned to the parent company if the seller defaulted. After default, the subsidiary brought suit, and the seller moved to dismiss for failure to join the parent company – a party to the agreement under which the suit had been brought. The First Circuit found that the parent company had an interest in the litigation since the parent company was entitled to the refund of the $250,000 deposit. Because of this interest, the First Circuit explained, there was "little doubt that" the parent company was a necessary party under Rule 19. *Id.*

Other cases further support that an absent party may have an interest relating to the subject of a case if the absent party has rights that will be affected by the issues being litigated. *See Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 635-636 (1st Cir. 1989) (ruling that claimants under insurance policy were necessary parties in dispute between insurer and insured); *Hoover v. Gershman Inv. Corp.*, 774 F. Supp. 60, 64 (D. Mass. 1991) (absent joint tenants had "legally protected interest in case" involving property they owned with the plaintiff); *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (insured attorney who had filed bankruptcy was a necessary party in malpractice claim brought against attorney's insurer because attorney had "stake in the outcome" in that the insurance would increase bankruptcy assets and recovery by creditors).

As in these cases, here, the Absent Named Insureds and Messrs. Cashman and Carnes have an interest in the subject of this action because they would ultimately be responsible for the legal fees Plaintiffs seek from Ulico. Responsibility for the legal fees Plaintiffs seek is an interest in the subject of this action like the parent company's interest in the $250,000 deposit in *Acton*. Messrs. Cashman and Carnes also have personal interests in the subject of this action because they received the legal services provided by Plaintiffs and could ultimately be personally responsible for the legal fees if there is no coverage for the Underlying Claim. Accordingly, the Absent Named Insureds and Messrs. Cashman and Carnes clearly are necessary parties under Rule 19.

In addition, the Absent Named Insureds also have an independent interest relating to the subject of this action because the Ulico Contract governing the scope of Ulico's defense obligations, if any, is between Ulico and the Absent Named Insureds. *See Acton*, 668 F.2d at 78. Indeed, a party to the contract in dispute is generally a necessary party under Rule 19. *See id*. Here, because the Absent Named Insureds are parties to the Ulico Contract, the Absent Named Insureds are necessary parties for this reason as well.

### 2.  The Absent Named Insureds' Interests, Like Messrs. Cashman And Carnes' Interests, May Be Impaired Or Impeded.

The interests of the Absent Named Insureds and Messrs. Cashman and Carnes may be impaired or impeded in their absence. This Court's interpretation of the Ulico Contract, if and when this case proceeds to its merits, could negatively affect the interests of the Absent Named Insureds and Messrs. Cashman and Carnes in subsequent litigation or in other circumstances. *Acton*, 668 F.2d at 78. Consequently, for this reason, the Court should dismiss Plaintiffs' complaint for failure to join the Absent Named Insureds and Messrs. Cashman and Carnes.

Rule 19 provides that a party is necessary if it has "an interest relating to the subject of the action and is so situated that the disposition of the action in the [party's] absence may … as a practical matter impair or impede the [party's] ability to protect that interest…." Fed. R. Civ. P. 19(a)(2)(i). *Acton*, 668 F.2d at 78. In *Acton*, the First Circuit recognized that even if the absent party would not be bound by rulings in the litigation, an adverse ruling related to the absent party's interest in the subject of the action could impair or impede that interest if the ruling "would be a persuasive precedent in a subsequent proceeding, and would weaken [the absent party's] bargaining position for settlement purposes." *Acton*, 668 F.2d at 78.

In this case, as explained above, whether Ulico is liable for the outstanding legal fees sought by Plaintiffs depends on, among other things, whether the Ulico Contract provides coverage for the Underlying Claim. Consequently, if and when this case proceeds on its merits, this Court will be

required to interpret provisions in the Ulico Contract.  Even if the Absent Named Insureds and

Messrs. Cashman and Carnes are not bound by these rulings, an adverse ruling would impair or

impede their interests because the ruling "would be a persuasive precedent… and would weaken"

their position in potential settlement negotiations.  *Acton*, 668 F.2d at 78.[5]

## IV.     CONCLUSION

For the reasons stated above, Ulico respectfully requests that this Court grant Ulico's Motion

to Dismiss.

ULICO CASUALTY COMPANY,
By its attorney

/s/ Lon A. Berk

_____
Lon A. Berk (BBO# 546835)
HUNTON & WILLIAMS
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102
Telephone:  703-714-7400
Facsimile:  703-918-4050
E-Mail:  lberk@hunton.com

*Of Counsel:*

Michael S. Levine (BBO# 633248)
Syed S. Ahmad
HUNTON & WILLIAMS
1751 Pinnacle Drive
Suite 1700
McLean, VA 22102
Telephone:  703-714-7400
Facsimile:  703-918-4050

---

[5] To the extent that this Court is required to interpret provisions in the Ulico Contract governing Ulico's right to seek reimbursement for advanced defense fees, Plaintiffs' interest in such issues would not be similar to the interests of the Absent Named Insureds and Messrs. Cashman and Carnes.  Plaintiffs seek payment of legal fees and are indifferent as to whether the fees are ultimately the responsibility of Ulico, the Absent Insureds, or Messrs. Cashman and Carnes.  The Absent Named Insureds and Messrs. Cashman and Carnes, in contrast, have an interest in these issues because such a ruling would create, limit, or otherwise affect their ultimate liability for the legal fees.

# ULICO CASUALTY COMPANY
## 111 Massachusetts Avenue N.W.
### Washington, D.C. 20001
### (202) 682-0900

## TRUSTEE AND FIDUCIARY LIABILITY INSURANCE POLICY

# DECLARATIONS

**THIS IS A CLAIMS-MADE POLICY WITH CLAIMS EXPENSES INCLUDED IN THE LIMITS OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

|  |  |  |
|---|---|---|
| **Policy Number:** | FLP-1801948 |
| **Renewal of Policy Number:** | FLP-1801948 |

**Item 1.**   **Insurance Representative:**   The Segal Company

     **Address:**   One Park Avenue, 7th Flr.
New York, NY 10016

**Item 2.**   **Trust or Plan:**   TEAMSTERS UNION 25 HEALTH SERVICES & INSURANCE PLAN; TEAMSTERSCARE STAFF 401(K) PLAN

     **Address:**   16 SEVER STREET
BOSTON, MA 02129

**Item 3.**   **Policy Period:**   **Effective Date:** 1/1/02    **Expiration Date:** 1/1/03
12:01 a.m. Local Time both dates at the address stated in Item 2.

**Item 4.**   **Limits of Liability:**   A. Each Claim $3,000,000.00   B. Aggregate: $3,000,000.00

**Item 5.**   **Deductible Amount:**   $0.00    Each Claim

**Item 6.**   **Premium:**

| | |
|---|---|
| Basic Premium: | $18,291.00 |
| Waiver of Recourse Premium: | $210.00 |
| Other: | $0.00 |
| Total: | $18,501.00 |

**Item 7.**   **Endorsements:**   See Attached Endorsement Schedule

These declarations together with the policy form TFL-1001 (11/99), the endorsements indicated in Item 7. above, if any, and the completed and signed application(s) with any submitted attachments complete the above numbered policy.

**Authorized Representative:** _[signature]_

         **Date:**   Jan 11, 2002

FL-1000(11/99)

# ULICO CASUALTY COMPANY

# TRUSTEE AND FIDUCIARY LIABILITY
# INSURANCE POLICY

**IMPORTANT NOTICE:**
**THIS IS A CLAIMS-MADE**
**TRUSTEE AND FIDUCIARY LIABILITY POLICY**

1. This policy does not become effective unless a declarations is issued to form a part of it.

2. This is a claims-made Trustee and Fiduciary Liability Insurance Policy. The coverage afforded by this policy is limited to liability for only those claims first made during the policy period specified on the declarations resulting from wrongful acts and which are subsequently reported to Ulico as soon as practicable.

3. This is a policy with claims expenses included in the Limits of Liability.

4. Please review this policy carefully and discuss the coverage with your lawyer, insurance advisor, agent or broker.

TFL-1001 (11/99)

# TABLE OF CONTENTS

**SECTION I**
Insuring Agreement ................................................................ 1

**SECTION II**
Defense and Settlement ........................................................... 1

**SECTION III**
Estates and Legal Representatives, Spousal Liability ............................ 2

**SECTION IV**
Exclusions ...................................................................... 2

**SECTION V**
Severability of Exclusions ...................................................... 3

**SECTION VI**
Limits of Liability ............................................................. 3

**SECTION VII**
Conditions ...................................................................... 4

**SECTION VIII**
Extended Reporting Period Endorsement ........................................... 8

**SECTION IX**
Definitions ..................................................................... 8

i

## ULICO CASUALTY COMPANY
## TRUSTEE AND FIDUCIARY LIABILITY INSURANCE CLAIMS-MADE POLICY

Whenever the term insured is used in this policy, it refers to any person or organization qualifying as such in Definition L., Section IX. Whenever the terms "we," "us," "our" or "Ulico" are used in this policy, they refer to Ulico Casualty Company. There are other defined terms that are used throughout this policy. These terms appear in bold-face type and are defined in Section IX., Definitions.

In consideration of payment of premium and subject to the declarations, limitations, conditions, provisions and other terms of this policy, Ulico agrees as follows:

## SECTION I.  INSURING AGREEMENT

Ulico shall pay on behalf of the insured all loss for which the insured becomes legally obligated to pay resulting from any claim first made against the insured during the policy period or the extended reporting period (if applicable) which results from a wrongful act.

## SECTION II.  DEFENSE AND SETTLEMENT

The insureds, and not Ulico, shall have the duty to defend claims against them.  Ulico will advance, excess of any applicable Deductible Amount, claims expenses for claims to which this policy provides coverage, subject to the insureds' agreement to repay such claims expenses in the event and to the extent that there is no coverage for such claims under this policy.

The insured shall have the right to select counsel to defend any covered claim, subject to the consent of Ulico, which shall not be unreasonably withheld, and subject to the selected counsel's agreement to comply with the litigation guidelines set forth by Ulico for the defense of covered claims.  Ulico shall have the right and shall be given the opportunity, at any time, to effectively associate with the insureds in the investigation, defense and settlement of any claim covered by this policy, by giving notice to the insured of such election.  Ulico's obligation to pay any loss shall cease upon exhaustion of the applicable Limit of Liability as set forth in Item 4. of the declarations.

Ulico may, with the written consent of the insured, make any settlement or compromise of a claim we deem appropriate.  Such consent shall not be unreasonably withheld.  If the insured withholds such consent to any settlement for any reason, our liability for all loss with respect to that claim shall not exceed the amount for which we could have settled such claim plus claims expenses accrued as of the date the insured refused to consent to settlement as recommended by Ulico, subject to the provision of Section VI., Limits of Liability.

The insureds shall not settle any claim, make any settlement offer, incur any claims expenses or otherwise assume any contractual obligation or admit any liability with respect to any claim without Ulico's written consent, which shall not be unreasonably withheld.  Ulico shall not be liable for any settlement, claims expenses, assumed obligations or admissions to which it has not consented.

If both loss covered by this policy and loss not covered by this policy are incurred, either because a claim against an insured includes both covered and uncovered matters or because a claim is made against both an insured and others, the insureds and Ulico shall allocate such amount between covered loss and uncovered loss based upon the relative legal exposures of such parties to such matters.

## SECTION III.  ESTATES AND LEGAL REPRESENTATIVES, SPOUSAL LIABILITY

Subject to the limitations, conditions, provisions and other terms of this policy:

A.  Coverage shall extend to claims for the wrongful acts of Insureds made against the estates, heirs, legal representatives or assigns of Insureds who are deceased or against the legal representatives or assigns of Insureds who are incompetent, insolvent or bankrupt;

B.  If a claim against an insured includes a claim against the lawful uninsured spouse of such insured solely by reason of such spouse's status as a spouse or such spouse's ownership interest in property which the claimant seeks as recovery for an alleged wrongful act of such insured, all loss which such spouse becomes legally obligated to pay on account of such claim shall be treated for purposes of this policy as loss which such insured becomes legally obligated to pay on account of a claim made against such insured.  All limitations, conditions, provisions and other terms of coverage applicable to such insured's loss shall also be applicable to such spousal loss.  However, coverage shall not apply to the extent any claim alleges any act or omission by such insured's spouse.

## SECTION IV.  EXCLUSIONS

A.  Ulico shall not be liable for loss on account of any claim made against an insured based upon, arising from, or in consequence of:

1.  Any fact, circumstance or situation, or demand, suit or other proceeding pending, or order, decree or judgment rendered against an insured, if written notice of such has been given under any policy prior to the effective date of this policy;

2.  Any deliberately dishonest, fraudulent or criminal acts or any willful violation of any statute or regulation by the insured; provided, however, that this exclusion shall not apply to such claim, or to Ulico's obligation to pay, reimburse or advance claims expenses regarding such claim, until a judgment or other final adjudication adverse to the insured shall establish such acts and/or violations;

3.  Any actual or alleged bodily injury, property damage or personal injury, except this exclusion shall not apply to claims asserting discrimination in violation of Section 510 of the Employee Retirement Income Security Act (ERISA) of 1974, as amended;

4.  The failure to collect from employers those contributions owed to the trust or plan, unless the failure is a result of the negligence of an insured;

5.  Any liability of others assumed by the insured under any contract or agreement, either oral or written, except to the extent that the insured would have been liable in the absence of the contract or agreement or unless the liability was assumed in accordance with or under the Agreement and Declaration of Trust pursuant to which the trust or plan were established;

6.  Any failure of the insured to comply with any law governing workers' compensation, unemployment, social security or disability benefits or any similar law, except the Consolidated Omnibus Budget Reconciliation Act (COBRA) of 1985, as amended;

7.  Any demand, suit or other proceeding pending, or order, decree or judgment rendered against an insured on or prior to the effective date of coverage under the first fiduciary liability insurance claims-made policy issued to the insured by Ulico provided that similar and uninterrupted coverage has been in force with Ulico since that time; or from the same or substantially similar fact, circumstance or situation underlying or alleged therein;

2

8. Any insured having gained, in fact, any personal profit, remuneration or advantage to which such insured was not legally entitled, or for the return by the insured of any remuneration paid to or received by such insured if payment or receipt of such remuneration was in violation of law;

9. Any wrongful act of an insured seeking adjudication or determination of: (i) the eligibility or non-eligibility of any person or persons to receive benefits or participate in the trust or plan; or (ii) the receipt or non-receipt of benefits from the trust or plan by any person or persons;

10. Any benefits which have been paid or are payable under the term of a trust or plan unless and to the extent that: (i) the insured is a natural person and the benefits are payable by such insured solely as a personal obligation, and (ii) recovery for the benefits is based upon a covered wrongful act;

11. The actual or alleged or threatened discharge, release, seepage, escape or disposal of any hazardous or toxic waste, emissions or substance, including but not limited to pollution or contamination of any kind, and including but not limited to directions, requests or orders that an insured report, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any hazardous or toxic waste, emissions or substances; or

12. Nuclear radiation in any form, no matter how emitted.

B. Ulico shall not be liable for that part of loss, other than claims expenses:

1. Which constitutes punitive or exemplary damages, fines or penalties, or the multiple portion of any multiplied damage award, other than civil penalties imposed upon an insured as a fiduciary under Section 502 (c), (i) or (l) respectively, of ERISA;

2. For the return of any contributions to any employer if such amounts are or could be chargeable to the trust or plan;

3. As a result of a claim, or any portion thereof, seeking injunctive or equitable relief.

## SECTION V. SEVERABILITY OF EXCLUSIONS

With respect to the Exclusions in Section IV. of this policy, no act or omission of one insured shall be imputed to any other insured for the purpose of determining the applicability of any exclusion, and the coverage otherwise afforded under this policy shall continue to apply to all insureds who did not commit, direct, approve, ratify or have knowledge of such act or omission.

## SECTION VI. LIMITS OF LIABILITY

Regardless of the number of persons or entities bringing claims and regardless of the number of persons or entities who are insureds, Ulico's liability under this policy and any written endorsements hereto, except as expressly provided therein, is limited as follows:

## A. "EACH CLAIM" LIMIT:

The "Each Claim" limit shown in Item 4.A. of the declarations is the maximum Ulico will pay as loss for any one claim. All claims arising out of the same wrongful act and all interrelated wrongful acts of any insured shall be deemed one claim, and such claim shall be deemed to have originated in the earliest policy period in which a claim is first made or deemed to have been first made against any insured alleging any such wrongful act or interrelated wrongful acts.

3

B. "AGGREGATE" LIMIT:

The "Aggregate" Limit shown in Item 4.B. of the declarations is the total sum Ulico will pay for all claims first made during a single policy period.

C. "DEDUCTIBLE AMOUNT":

The "Deductible Amount" shown in Item 5. of the declarations shall be deducted from all amounts, including claims expenses, paid by Ulico for each claim, and Ulico shall be liable only for sums in excess of such Deductible Amount. Ulico may elect to pay all or part of the Deductible Amount to effect settlement of a claim and, upon notice of the action taken by Ulico, the insured shall promptly reimburse such part of the Deductible Amount as has been paid by Ulico.

## SECTION VII.  CONDITIONS

### A.  INSURED'S DUTIES IN THE EVENT OF A CLAIM, REPORTING AND NOTICE

The insureds shall, as a condition precedent to the application of all insurance afforded by this policy, give Ulico written notice as soon as practicable of any claim made against any of them for a wrongful act.

If during the policy period or extended reporting period (if applicable) an insured first becomes aware of any wrongful act which may subsequently give rise to a claim and gives written notice thereof as set forth herein to Ulico, then any claim subsequently made against the insured with regard to such wrongful act shall be deemed to have been made during the policy period or the extended reporting period in which the wrongful act was first reported to us.

The required written notices as stated above shall contain particulars sufficient to identify the insured, any claimant or potential claimant and full information with respect to the time, place and circumstances of the wrongful act which led to the claim, or which may subsequently give rise to a claim, including the names and addresses of persons or entities which may have or which claim to have suffered injury or loss, and of available witnesses.

The insureds shall, as a condition precedent to the application of all insurance afforded by this policy, give Ulico such information and cooperation as it may reasonably request. The insureds shall, upon request, assist in making settlements and in defense of claims and in enforcing rights of contribution or indemnity against any person or entity which may be liable to the insured because of an act or omission covered under this policy, shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insureds shall not prejudice Ulico's position or its potential or actual rights of recovery.

Notice to Ulico under this section shall be given in writing to:

Claims Department
Ulico Casualty Company
111 Massachusetts Avenue, N.W.
Washington, D.C. 20001

4

B. **SUBROGATION AND WAIVER OF RECOURSE**

In the event of any payment under this policy, Ulico shall be subrogated to all of the insured's rights of recovery against any person or organization to the extent of such payment and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after an injury or loss to prejudice such rights.

If any premium for this policy is paid out of the assets of the trust or plan, then we shall have the right of recourse required by Section 401(b)(1) of ERISA, unless an insured, other than the trust or plan, has paid a waiver of recourse premium.

C. **AUTHORIZATION**

By acceptance of this policy, the insurance representative agrees to act on behalf of all insureds with respect to the giving and receiving of notice of claim, cancellation or non-renewal, the payment of premiums and the receiving of any return premiums that may become due under this policy, the negotiation, agreement to and acceptance of endorsements, and all insureds agree that the insurance representative shall act on their behalf; provided, however, that nothing herein shall relieve the insureds, and each of them, from giving any notice to Ulico that is required under Condition A. above.

D. **ACTION AGAINST ULICO**

No action shall lie against Ulico unless, as a condition precedent thereto, there shall have been full compliance with all of the terms and conditions of this policy and not, except with respect to the duty to pay, reimburse or advance claims expenses, until the amount of the insured's obligation to pay shall have been finally determined whether by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and Ulico. No person or organization shall have any right under this policy to join us as a party to any action against an insured to determine the insured's liability, nor shall we be impleaded by the insured or the insured's legal representatives.

E. **BANKRUPTCY OR INSOLVENCY**

Bankruptcy or insolvency of the insured or insured's estate shall not relieve Ulico of any of its obligations hereunder nor deprive us of our rights under this policy.

F. **REPRESENTATIONS AND SEVERABILITY**

By acceptance of this policy the insured agrees that the statements in the application (hereby made part of this policy) are its representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the insured and Ulico, or any of its representatives, relating to this insurance.

Such written application for this policy shall be construed as a separate application for coverage by each insured. With respect to the statements contained in such written application for coverage, no statement in the application or knowledge possessed by any insured shall be imputed to any other insured for the purpose of determining the availability of coverage hereunder.

G. **ASSIGNMENT AND TRANSFERS**

This policy shall be void if assigned or transferred without Ulico's prior written consent by endorsement to this policy.

## H. CHANGES

Notice to or knowledge possessed by any agent or other person acting on behalf of Ulico shall not effect a waiver or a change of any part of this policy or stop us from asserting any right under the terms of this policy, nor may the terms of this policy be waived or changed, except by endorsement.

## I. PREMIUM

All premiums for this policy shall be computed in accordance with Ulico's rules, rates, premiums and minimum premiums applicable to the insurance afforded herein.

## J. CANCELLATION

The insured can cancel this policy at any time.  Ulico has the same right.

1. **If the insured cancels:**
   To cancel this policy, the insured must surrender the policy to Ulico or mail a written notice stating when thereafter it wishes the cancellation to take effect.  If the insured cancels prior to the expiration date of the current policy period, the insured shall be refunded any unearned premium computed at the customary short rates for early cancellation.

2. **If Ulico cancels:**
   If Ulico cancels this policy, a written notice will be mailed to the address shown in Item 2. of the declarations.

   The date of cancellation shall be at least sixty (60) days from the date of written notice, unless cancellation is for non-payment of premium, in which event the date of cancellation will be at least ten (10) days from the date of the written notice.

   Ulico will refund any unearned premium computed on a pro rata basis.  However, the cancellation will be effective regardless of whether the insured has received the unearned premium.

## K. NON-RENEWAL

The insured may non-renew this policy at the end of the policy period.  Ulico has the same right.

1. **If the insured non-renews:**
   If the insured does not pay the renewal premium, or sends us written notice stating the intent not to renew the policy for the next policy period, the insured has non-renewed the policy.

2. **If Ulico non-renews:**
   If Ulico non-renews the policy at the end of the policy period, a written notice will be sent out a minimum of sixty (60) days in advance to the address shown on the declarations or to the most current address the insured has provided in writing.

## L. OTHER INSURANCE

This insurance shall apply only as excess insurance over, and shall not contribute with, any other valid and collectible insurance available to the insured, unless such other insurance is specifically in excess of this policy.

## M. COVERAGE TERRITORY

The insurance afforded by this policy applies anywhere in the world.

## N. VALUATION AND CURRENCY

All premiums, limits, retentions, loss and other amounts under this policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of loss under this policy is stated in a currency other than United States of America dollars, payment under this policy shall be made in United States of America dollars at the rate of exchange published in the Wall Street Journal on the date the final judgment is reached, the amount of settlement is agreed upon or any element of loss is due, respectively.

## O. CHANGES IN EXPOSURE

1. Merger, consolidation or assumption of trust or plan:

   a. If a trust or plan merges into or consolidates with another trust or plan not enumerated in Item 2. of the declarations, coverage under this policy for such insureds thereof who were insureds prior to such merger or consolidation shall continue until cancellation or non-renewal of this policy.

   b. If the responsibility for the administration or as a fiduciary of a trust or plan is fully assumed by another person or entity, coverage under this policy for insureds who were insureds prior to such assumption of responsibilities shall continue until cancellation or non-renewal of this policy but only with respect to claims for wrongful acts which occurred prior to such assumption of responsibilities.

   The insured shall give written notice to Ulico of such merger, consolidation or assumption of responsibilities as soon as practicable together with such information as we may require.

2. Termination of trust or plan:

   If a trust or plan terminates before the expiration date of this policy, coverage with respect to such terminated trust or plan shall continue until cancellation or non-renewal of this policy for those who were insureds at the time of such trust or plan termination with respect to actual or alleged wrongful acts occurring prior to or after the date of such trust or plan termination. The insured shall give written notice to Ulico of such termination as soon as practicable together with such information as we may require.

3. Amendment or modification of Agreement and Declaration of Trust:

   In the event that any amendment or modification is made to the Agreement and Declaration of Trust, a copy of such amendment or modification must be furnished to Ulico no later than ninety (90) days after such change was approved by the trustees of the trust or plan or the end of the policy period, whichever is earlier.

## P. TERMS OF POLICY CONFORM TO STATUTE

Terms of this policy which conflict with applicable statutes of the state where this policy is issued are hereby amended to conform to such statutes.

7

## SECTION VIII.  EXTENDED REPORTING PERIOD ENDORSEMENT

If this policy is non-renewed or is canceled by either the Insured or Ulico, the insured shall have the right to purchase an **extended reporting period endorsement** provided that the **Insured** is in compliance with all terms and conditions of the policy and all billed premiums have been paid.  The **extended reporting period endorsement** provides coverage on account of any **claim** first made against the **Insured** during the extended reporting period, but only for **wrongful acts** occurring wholly prior to the non-renewal or cancellation date of this policy, and which are subsequently reported as soon as practicable but in no event more than thirty (30) days after the end of the extended reporting period specified in the **extended reporting period endorsement**.  Any **claim** made during the extended reporting period shall be deemed to have been made during the immediately preceding policy period.  Therefore, the **extended reporting period endorsement** shall not provide a new, additional or renewed "Aggregate" limit of liability.

This right to purchase this optional endorsement shall lapse unless Ulico receives the following:  (i) a written notice requesting an **extended reporting period endorsement** within ten (10) days following the non-renewal or cancellation date of this policy, and (ii) the payment of the additional premium for such coverage by the due date specified on the premium invoice.  The term of the extended reporting period is twelve (12) months.  Ulico reserves the right to approve a request for an extended reporting period exceeding twelve (12) months, but under no circumstances shall the extended reporting period exceed seventy-two (72) months.

The additional premium for the **extended reporting period endorsement** will be computed in accordance with the rules, rates and premiums in effect on the date of non-renewal or cancellation.  Upon payment of such additional premium, which shall be deemed fully earned and non-refundable, the **extended reporting period endorsement** will be issued.  The **extended reporting period endorsement** is not cancelable.

## SECTION IX.  DEFINITIONS

The following terms in bold-face type, when used in this policy, shall have the meanings set forth below:

A.  **Administration** means handling the records, effecting enrollment, and termination or cancellation of employees or participants with respect to benefits under a trust or plan.

B.  **Bodily Injury** means injury to the body, sickness, or disease sustained by a person, including death resulting from any of these at any time.  **Bodily injury** also means mental injury, mental anguish, mental tension, emotional distress, pain, suffering, or shock sustained by that person, as a result of such **bodily injury**.

C.  **Claim** means:

1.  A written demand for monetary damages or injunctive or other equitable relief,

2.  A civil proceeding commenced by the service of a complaint or similar pleading,

3.  A criminal proceeding commenced by the return of an indictment, or

4.  A formal administrative or regulatory investigation or proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against an **insured** for a **wrongful act**, including any appeal therefrom.

8

D. **Claims Expenses** means that part of loss consisting of reasonable and necessary fees and expenses incurred in the investigation, defense, settlement and appeal of a claim, including the premium for appeal bonds regarding such claim; but claims expenses shall not include salaries, wages, benefits or overhead of, or paid to, any insured.

E. **Declarations** means the document that validates the coverage available under this policy. The declarations shows the trust or plan, the policy number, the policy period, the Limits of Liability purchased, the Deductible Amount, the premium, and the insurance representative. This policy is not in effect unless a declarations signed by an authorized representative of Ulico has been issued.

F. **Effective Date** means the day this coverage begins at 12:01 a.m. Local Time in this policy period. This date is shown in Item 3. of the declarations.

G. **Endorsement** means a document signed by an authorized representative of Ulico that modifies the coverage provisions set forth in the policy. If the terms of any endorsement are inconsistent with the terms of this policy, the terms of the endorsement supersede the policy.

H. **Expiration Date** means the day this coverage ends at 12:01 a.m. Local time in this policy period. This date is shown in Item 3. of the declarations.

I. **Extended Reporting Period** means the period of time indicated in the extended reporting period endorsement. All dates are 12:01 a.m. Local Time.

J. **Extended Reporting Period Endorsement** is an endorsement which provides coverage on account of any claim first made against the insured, but only for wrongful acts occurring wholly prior to the non-renewal or cancellation date of this policy, and which are subsequently reported as soon as practicable but in no event more than thirty (30) days after the end of the extended reporting period shown on this endorsement.

K. **Insurance Representative** means the person or organization authorized to represent the insured and designated in Item 1. of the declarations.

L. **Insured** means any:

    1. Trust and plan;

    2. Natural person serving as past, present or future trustee of a trust or plan, while acting in his or her capacity as a fiduciary;

    3. Natural person serving as past, present or future employee of a trust or plan, while acting in his or her capacity as such; and

    4. Other natural person or organization designated as an additional insured by endorsement to this policy.

M. **Interrelated Wrongful Acts** means all wrongful acts which are based upon, directly or indirectly arising or resulting from, related to or are in consequence of, the same or a series of continuous or related facts, circumstances, situations, transactions or events.

N. **Loss** means money, including, but not limited to, damages, judgments, settlements, costs, prejudgment and post judgment interest, which any insured shall become legally obligated to pay as a result of a claim. Loss also means claims expenses incurred in the investigation, defense, settlement and appeal of a claim. Loss does not include matters uninsurable under the law pursuant to which this policy is construed.

9

O. **Personal Injury** means injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment, or malicious prosecution;

2. Abuse of process;

3. The publication or utterance of libel or slander or of other defamatory or disparaging material, or a publication or an utterance in violation of an individual's right to privacy;

4. Wrongful entry or eviction, or other invasion of the right to private occupancy; or

5. Harassment, misconduct or discrimination of any nature arising out of any cause whatsoever, including, but not limited to, age, race, creed, color, sex, national origin, religion, disability, marital status or sexual orientation.

P. **Plan** means those plans shown in Item 2. of the declarations.

Q. **Policy Period** means the period of time between the effective date and expiration date shown in Item 3. of the declarations. If the policy is canceled prior to the expiration date, the policy period is the period of time between the effective date and the cancellation date of this policy.

R. **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality, or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapors, soot, fumes, acids, alkalis, chemicals or waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products and any noise.

S. **Property Damage** means physical injury to, or destruction of tangible property, including loss of use thereof.

T. **Trust** means those trusts shown in Item 2. of the declarations.

U. **Wrongful Act** means:

1. Any actual or alleged error or omission or breach of duty committed or alleged to have been committed by the insured, either jointly or severally, in the discharge of fiduciary duties, responsibilities or obligations as imposed upon fiduciaries of any trust or plan by ERISA or by COBRA, or by the common or statutory law of the United States of America, or any state or other jurisdiction anywhere in the world; or

2. Any negligent act, error or omission in the administration of any trust or plan.


IN WITNESS WHEREOF; Ulico Casualty Company has caused this policy to be signed by its Chairman and Assistant Secretary at Washington, District of Columbia, but this policy is not effective unless Ulico has issued a declarations as part of this policy.


_____                    _____
Chairman, President and Chief Executive Officer                    Assistant Secretary

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | Crim. No. 1:02-10015-MLW |
| v. ) | JLA |
| ) | Violations: |
| 1. GEORGE W. CASHMAN, ) | 18 USC 664; 1027; 1341; 371; |
| 2. WILLIAM H. CARNES, ) | 2; 29 USC 186(a)&(b) |
| 3. THOMAS A. DISILVA, ) | |
| 4. JAMES P. DISILVA, ) | |
| 5. WILLIAM P. BELANGER, ) | |
| 6. DISILVA TRANSPORTATION, INC., ) | |
| 7. HUTCHINSON INDUSTRIES, INC., ) | |
| and ) | |
| 8. MANFI LEASING CORPORATION ) | |
| ) | |

## INDICTMENT

THE UNITED STATES GRAND JURY in and for the District of

Massachusetts charges that:

### COUNT ONE
(Conspiracy to steal and embezzle from employee benefit plan, to
file false documents with ERISA plans, to commit mail fraud, and
to violate the Taft-Hartley Act)

1.   At times material to the allegations contained in this

Count:

a.   The International Brotherhood of Teamsters,

through its affiliated locals, did represent and would admit to

membership persons who were employed by various companies

involved in numerous industries including, but not limited to,

trucking and warehousing throughout the United States.

b.   Local 25 of the International Brotherhood of

Teamsters (hereinafter "IBT Local 25") was located in

Charlestown, Massachusetts, and was a labor organization and

employee organization engaged in an industry affecting commerce, within the meaning of Sections 152, 402, and 1003 of Title 29 of the United States Code. IBT Local 25 represented approximately 9,000 members and had jurisdiction throughout the Greater Boston area.

c. The IBT Local 25 Health Services and Insurance Plan (hereinafter "IBT Local 25 HSIP") was located in Charlestown, Massachusetts and provided health care benefits to approximately 20,000 participants. These participants constituted active and retired members of IBT Local 25 and their families. As such, it was an "employee welfare benefit plan" within the meaning of Section 1002(1) of Title 29 of the United States Code.

d. The New England Teamsters and Trucking Industry Pension Fund (hereinafter "NETTIPF") was located in Boston, Massachusetts, and provided retirement benefits to approximately 22,000 retired members of various IBT locals and their families throughout New England region. Additionally, NETTIPF received monthly contributions from employers on behalf of approximately 29,000 active members throughout the region. As such, it was an "employee pension benefit plan" within the meaning of Title 29, United States Code, Section 1002(2)(A).

e. The Employee Retirement Income Security Act of 1974 (hereinafter ERISA), Title 29, United States Code, Section 1001 et seq., was enacted to protect the interests of

2

participants in private-sector employee benefit plans and their beneficiaries. Thus, NETTIPF and IBT Local 25 HSIP were subject to Title 1 of ERISA.

    f.   Congress declared it to be national policy to protect interstate commerce and the interests of participants in ERISA plans and their beneficiaries by establishing standards of conduct, responsibility, and obligation for fiduciaries of ERISA plans, and by providing for appropriate remedies and sanctions.

    g.   A fiduciary of an ERISA plan included any person who exercised any authority or control respecting the management or disposition of plan assets or any person who rendered investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or had any responsibility to do so.

    h.   A fiduciary of an ERISA plan had a duty to act solely in the interest of the participants and beneficiaries, and for the exclusive purpose of providing benefits to participants and beneficiaries and for defraying reasonable expenses of administering the plan. In so doing, a fiduciary of an ERISA plan had a duty to exercise care, skill, prudence, and diligence.

    i.   The defendants HUTCHINSON INDUSTRIES, INC., MANFI LEASING, CORP., and DISILVA TRANSPORTATION, INC. (hereinafter "the DISILVA companies") were companies which were signatories to collective bargaining agreements with IBT Local 25 and also to

the National Master Freight Agreement and New England
Supplemental Agreement with the International Brotherhood of
Teamsters.  The DISILVA companies were, therefore, employers
within the meaning of Title 29, United States Code, Section 186,
and were required to accurately report to IBT Local 25 HSIP and
NETTIPF the amount of hours worked by members of IBT Local 25 and
to make contributions to IBT Local 25 HSIP and NETTIPF
accordingly.  This reporting was generally accomplished by filing
"remittance reports" with IBT Local 25 HSIP and NETTIPF, and, on
occasion, supplemental letters designed to make corrections to
those reports.  The defendants HUTCHINSON INDUSTRIES and MANFI
LEASING had their principal place of business at 20 A Street in
Burlington, Massachusetts.  The defendant DISILVA TRANSPORTATION
had its principal place of business at 50 Middlesex Avenue in
Somerville, Massachusetts.  Among the principal officers and
stockholders of these companies were the defendants THOMAS and
JAMES DISILVA.  The defendant WILLIAM BELANGER is the brother-in-
law of the defendants THOMAS and JAMES DISILVA and was the
president and treasurer of the defendant MANFI LEASING.

        j.    John Murray was a member of IBT Local 25 since
approximately 1983, and was also a member and associate of a
loosely knit criminal organization based in Charlestown,
Massachusetts (hereinafter "the Charlestown group").  Like John
Murray, many of the members and associates of the Charlestown

4

group were also members of IBT Local 25.

     k.   The defendant GEORGE CASHMAN has been president of
IBT Local 25 since approximately 1992.  The defendant WILLIAM
CARNES has been vice-president of IBT Local 25 since
approximately 1992.  Both CASHMAN and CARNES were also trustees
of IBT Local 25 HSIP.  CASHMAN was also a trustee of NETTIPF.

    2.   From in or before February 1990 through the present, in
the District of Massachusetts and elsewhere, the defendants

GEORGE CASHMAN,<br>
WILLIAM CARNES,<br>
THOMAS DISILVA,<br>
JAMES DISILVA,<br>
WILLIAM BELANGER,<br>
DISILVA TRANSPORTATION, INC.,<br>
HUTCHINSON INDUSTRIES, INC., and<br>
MANFI LEASING CORPORATION,

and others known and unknown to the grand jury, did conspire,
confederate and agree to:

    (a) embezzle, steal, and unlawfully and willfully
abstract and convert to their own use or to the use of another,
the moneys, funds, property and other assets of an employee
welfare benefit plan and a fund connected therewith in violation
of Title 18, United States Code, Section 664;

    (b)  cause false statements and representations of fact
to be made, knowing the same to be false in documents required to
be kept as part of the records of an employee welfare benefit
plan and an employee pension benefit plan in violation of Title
18, United States Code, Section 1027;

5

(c) unlawfully pay and deliver money and other things
of value in excess of $1,000 to union officials and third parties
designated by said union officials (1) under circumstances in
which said union officials represented, sought to represent, and
would admit to membership the employees of the DISILVA companies
and (2) with intent to influence said union officials in respect
to their actions, decisions, and duties as representatives of
employees and as officers and employees of a labor organization
in violation of Title 29, United States Code, Sections 186
(a)(2), (a)(4), and (b)(1); and

(d)   place in any post office or authorized depository
for mail matter documents and other matter to be sent or
delivered by the United States Postal Service pursuant to a
scheme and artifice to defraud and for obtaining money and
property by means of false and fraudulent pretenses,
representations and promises and for the purpose of executing
such scheme or artifice in violation of Title 18, United States
Code, Section 1341;

in that the defendants did mail and cause to be mailed false and
fictitious remittance reports and other documents designed to
deceive and defraud IBT Local 25 HSIP and NETTIPF and did thereby
cause IBT Local 25 HSIP to pay claims for health care for certain
IBT Local 25 members and their dependents who were ineligible for
such benefits.

6

## METHODS AND MEANS OF THE CONSPIRACY

3. It was a part of the conspiracy that John Murray and others, known and unknown to the grand jury, utilized their membership in and influence over the affairs of IBT Local 25 to engage in various criminal activities.

4. It was a part of the conspiracy that the DISILVA companies, at the request of certain individuals including, but not limited to IBT Local 25 president GEORGE CASHMAN and IBT Local 25 vice-president WILLIAM CARNES, agreed to falsify monthly remittance reports and similar documents submitted to IBT Local 25 HSIP in violation of Title 18, United States Code, Section 1027 in order to enable certain members of IBT Local 25 to collect benefits when those persons were otherwise ineligible.

5. It was a part of the conspiracy that John Murray solicited GEORGE CASHMAN to request that the DISILVA companies report fictitious hours to IBT Local 25 HSIP in order to enable John Murray and members of his family to collect benefits from IBT Local 25 HSIP.

6. It was a part of the conspiracy that John Murray submitted claims to IBT Local 25 HSIP until approximately August 1997 and did thereby defraud IBT Local 25 HSIP of approximately $35,000 United States currency.

7. It was a part of the conspiracy that the DISILVA companies submitted false and fictitious remittance reports and

7

other documents to IBT Local 25 HSIP and NETTIPF on behalf of Matthew DiSilva, a nephew of the defendants THOMAS and JAMES DISILVA, when Matthew DiSilva was in truth and fact employed by Hutchinson Leasing, Inc., a company associated with the DISILVA companies that was not a signatory to a collective bargaining agreement with IBT Local 25 or any other IBT entity.

8.   It was a part of the conspiracy that the DISLIVA companies submitted false and fictitious remittance reports and other documents to IBT Local 25 HSIP and NETTIPF on behalf of Robert McCullough, a brother-in-law of the defendants THOMAS and JAMES DISILVA, when Robert McCullough was in truth and fact employed by Hutchinson Leasing, Inc., a company associated with the DISILVA companies that was not a signatory to a collective bargaining agreement with IBT Local 25 or any other IBT entity.

### OVERT ACTS

9.   In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their co-conspirators committed and caused to be committed, in the District of Massachusetts and elsewhere, the following overt acts, among others;

### Regarding John Murray

a.   On or about February 15, 1990, a false document was submitted to IBT Local 25 HSIP falsely reporting that John Murray had worked for 160 hours for Hutchinson Industries.

8

b.   On or about January 27, 1992, a false document was submitted to IBT Local 25 HSIP falsely reporting that John Murray had worked for 520 hours for Hutchinson Industries.

c.   On or about November 16, 1992, a false document was submitted to IBT Local 25 HSIP falsely reporting that John Murray had worked for 120 hours for Manfi Leasing.

d.   On or about May 11, 1993, a false document was submitted to IBT Local 25 HSIP falsely reporting that John Murray had worked for 120 hours for Hutchinson Industries.

e.   On or about October 15, 1993, a false document was submitted to IBT Local 25 HSIP falsely reporting that John Murray had worked for 128 hours for Hutchinson Industries.

f.   On or about April 8, 1994, a false document was submitted to IBT Local 25 HSIP falsely reporting that John Murray had worked for 120 hours for Hutchinson Industries.

g.   On or about October 11, 1996, a false document was submitted to IBT Local 25 HSIP falsely reporting that John Murray had worked for 336 hours for Hutchinson Industries.

h.   On or about January 6, 1997, John Murray or one of his covered dependents submitted claims to IBT Local 25 HSIP.

i.   On or about January 7, 1997, John Murray or one of his covered dependents submitted a claim to IBT Local 25 HSIP.

j.   On or about January 8, 1997, John Murray or one of his covered dependents submitted a claim to IBT Local 25 HSIP.

9

k.   On or about February 23, 1997, John Murray or one
of his covered dependents submitted claims to IBT Local 25 HSIP.

l.   On or about April 29, 1997, John Murray or one of
his covered dependents submitted claims to IBT Local 25 HSIP.

m.   On or about May 7, 1997, John Murray or one of his
covered dependents submitted a claim to IBT Local 25 HSIP.

n.   On or about February 11, 1997, IBT Local 25 HSIP
paid a claim submitted by John Murray or one of his covered
dependents for services provided on or about January 7, 1997.

o.   On or about June 13, 1997, IBT Local 25 HSIP paid
a claim submitted by John Murray or one of his covered dependents
for services provided on or about May 7, 1997.

p.   On or about October 5, 1999, IBT Local 25 HSIP
paid a claim submitted by John Murray or one of his covered
dependents for services provided on or about April 29, 1997.

Regarding Ronald Dunder

q.   On or about January 22, 1997, a false document was
submitted to IBT Local 25 HSIP falsely reporting that Ronald
Dunder worked for 40 hours for Hutchinson Industries.

r.   On or about March 8, 1997 IBT Local 25 HSIP
covered the cost of a claim submitted by Ronald Dunder or one of
his covered dependents for services provided on or about March 8,
1997.

s.   On or about May 16, 1997, IBT Local 25 HSIP

10

covered the cost of a claim submitted by Ronald Dunder or one of his covered dependents for services provided on or about May 16, 1997.

### Regarding Larry Burns

t. On or about February 14, 1996, a false document was submitted to IBT Local 25 HSIP falsely reporting that Larry Burns worked 50 hours for Hutchinson Industries.

### Regarding Thomas Costley

u. On or about January 22, 1997, a false document was submitted to IBT Local 25 HSIP falsely reporting that Thomas Costley worked for 40 hours for Hutchinson Industries.

v. On or about August 4, 1997, IBT Local 25 HSIP paid a claim submitted by Thomas Costley or one of his covered dependents for services provided on or about July 1, 1997.

w. On or about July 29, 1997, IBT Local 25 HSIP paid a claim submitted by Thomas Costley or one of his covered dependents for services provided on or about June 30, 1997.

### Regarding John McBride

x. On or about March 12, 1997, a false document was submitted to IBT Local 25 HSIP falsely reporting that John McBride worked for 12 hours for Hutchinson Industries.

### Regarding Joseph Strano

y. On or about February 10, 1995, a false document was submitted to IBT Local 25 HSIP falsely reporting that Joseph

11

Strano worked for 24 hours for Hutchinson Industries.

### Regarding Robert Ash

z. On or about May 24, 1995, a false document was submitted to IBT Local 25 HSIP falsely reporting that Robert Ash worked for 32 hours for Hutchinson Industries.

### Regarding George Sordello

aa. On or about May 8, 1996, a false document was submitted to IBT Local 25 HSIP falsely reporting that George Sordello worked for 104 hours for Hutchinson Industries.

### Regarding Michael O'Rourke

bb. During October 1998, a false document was submitted to IBT Local 25 HSIP falsely reporting that Michael O'Rourke worked for 80 hours for Hutchinson Industries.

cc. On or about November 17, 1998, IBT Local 25 HSIP covered the cost of a claim submitted by Michael O'Rourke or one of his covered dependents for services provided on or about November 17, 1998.

dd. On or about February 12, 1999, IBT Local 25 HSIP covered the cost of a claim submitted by Michael O'Rourke or one of his covered dependents for services provided on or about February 12, 1999.

### Regarding Edward Reale

ee. On or about July 14, 1997, a false document was submitted to IBT Local 25 HSIP falsely reporting that Edward

Reale worked for 120 hours for Hutchinson Industries.

ff.  On or about October 23, 1997, IBT Local 25 HSIP paid a claim submitted by Edward Reale or one of his covered dependents for services provided on or about September 9, 1997.

gg.  On or about October 30, 1997, IBT Local 25 HSIP paid a claim submitted by Edward Reale or one of his covered dependents for services provided on or about October 4, 1997.

### Regarding Alan Carr

hh.  On or about September 24, 1997, a false document was submitted to IBT Local 25 HSIP falsely reporting that Alan Carr worked for 104 hours for Hutchinson Industries.

ii.  On or about August 25, 1997, IBT Local 25 HSIP paid a claim submitted by Alan Carr or one of his covered dependents for services provided on or about March 13, 1997.

jj.  On or about March 4, 1997, Alan Carr utilized the services of the Teamsters Local 25 Dental Facility.  There is no charge to covered members.

### Regarding Wilbur Ellis

kk.  On or about October 14, 1994 a false document was submitted to IBT Local 25 HSIP falsely reporting that Wilbur Ellis worked for 104 hours for Hutchinson Industries.

### Regarding Robert Destasio

ll.  On or about October 14, 1994 a false document was submitted to IBT Local 25 HSIP falsely reporting that Robert

13

01/17/02  12:13 FAX
Case 1:02-cv-10086-RCL   Document 1   Filed 01/16/2002   Page 14 of 32
Case 1:02-cv-10086-RCL   Document 9   Filed 07/22/2005   Page 44 of 32

Destasio worked for 104 hours for Manfi Leasing.

### Regarding Bernard Fraser

mm.  On or about October 14, 1994 a false document was submitted to IBT Local 25 HSIP falsely reporting that Bernard Fraser worked for 104 hours for Manfi Leasing.

### Regarding Joseph Marshall

nn. On or about March 13, 1992, a false document was submitted to IBT Local 25 HSIP falsely reporting that Joseph Marshall worked for 160 hours for Manfi Leasing.

oo. On or about March 11, 1993, a false document was submitted to IBT Local 25 HSIP falsely reporting that Joseph Marshall worked for 160 hours for Manfi Leasing.

### Regarding Robert McCullough

pp. During 1997 three false documents were submitted to IBT Local 25 HSIP falsely reporting that Robert McCullough worked for 160, 200, and 160 hours for Manfi Leasing.

qq. During 1998 12 false documents were submitted to IBT Local 25 HSIP falsely reporting that Robert McCullough worked for 200, 160, 160, 160, 200, 160, 160, 200, 160, 200, 160, and 160 hours for Manfi Leasing.

rr. During 1999 12 false documents were submitted to IBT Local 25 HSIP falsely reporting that Robert McCullough worked for 200, 160, 160, 160, 200, 160, 200, 160, 160, 200, 160, and 160 hours for Manfi Leasing.

ss.  During 2000 12 false documents were submitted to
IBT Local 25 HSIP falsely reporting that Robert McCullough worked
for 200, 160, 160, 200, 160, 160, 200, 160, 200, 160, 160, and
200 hours for Manfi Leasing.

tt.  On or about January 13, 2000, IBT Local 25 HSIP
paid a claim submitted by Robert McCullough or one of his covered
dependents for services provided on or about December 8, 1999.

uu.  On or about March 20, 2001, IBT Local 25 HSIP paid
a claim submitted by Robert McCullough or one of his covered
dependents for services provided on or about January 17, 2001.

### Regarding Thomas McGrath

vv.  On or about July 12, 1999 a false document was
submitted to IBT Local 25 HSIP falsely reporting that Thomas
McGrath worked for 120 hours for Manfi Leasing.

xx.  On or about April 13, 2000, IBT Local 25 HSIP paid
a claim submitted by Thomas McGrath or one of his covered
dependents for services provided on or about November 11, 1999.

yy.  On or about April 19, 2000, IBT Local 25 HSIP paid
a claim submitted by Thomas McGrath or one of his covered
dependents for services provided on or about December 16, 1999.

### Regarding Richard Murray

zz.  On or about December 18, 1992 a false document was
submitted to IBT Local 25 HSIP falsely reporting that Richard
Murray worked for 160 hours for Manfi Leasing.

15

aaa.   On or about December 10, 1993 a false document was submitted to IBT Local 25 HSIP falsely reporting that Richard Murray worked for 120 hours for Manfi Leasing.

### Regarding Matthew DiSilva

bbb.   During 2000 10 false documents were submitted to IBT Local 25 HSIP falsely reporting that Matthew DiSilva worked for 200, 160, 160, 200, 160, 200, 200, 160, 160, and 160 hours for DiSilva Transportation.

ccc.   On or about November 29, 2001, IBT Local 25 HSIP paid a claim submitted by Matthew DiSilva or one of his covered dependents for services provided on or about October 18, 2001.

ddd.   On or about September 17, 2001, IBT Local 25 HSIP paid a claim submitted by Matthew DiSilva or one of his covered dependents for services provided on or about August 21, 2001.


In violation of Title 18, United States Code, Section 371.

16

<u>COUNTS TWO THROUGH TEN</u>
(Theft or embezzlement from employee benefit plan)

1.    Paragraph One of Count One is realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants

GEORGE CASHMAN,
WILLIAM CARNES,
THOMAS DISILVA,
JAMES DISILVA,
WILLIAM BELANGER,
DISILVA TRANSPORTATION, INC.,
HUTCHINSON INDUSTRIES, INC., and
MANFI LEASING CORPORATION,

aided and abetted by others known and unknown to the grand jury, did embezzle, steal, and unlawfully and willfully abstract and convert to their own use or to the use of another, the moneys, funds, property and other assets of an employee welfare benefit plan and a fund connected therewith in that the defendants did submit false documents to IBT Local 25 HSIP and did thereby cause IBT Local 25 HSIP to pay claims for health care for ineligible members of IBT Local 25 and their dependents.

| Count | Ineligible participant | Date of last paid claim | Total approximate payments |
|-------|------------------------|-------------------------|----------------------------|
| 2 | John Murray | 10/5/99 | $35,000 |
| 3 | Ronald Dunder | 8/14/97 | $2,750 |
| 4 | Thomas Costley | 8/27/97 | $1,600 |
| 5 | Michael O'Rourke | 2/25/99 | $1,800 |

17

Case 1:02-cr-10015-RCL Document 9    Filed 01/16/2002    Page 18 of 32

| 6  | Edward Reale      | 10/4/97  | $65      |
|----|-------------------|----------|----------|
| 7  | Alan Carr         | 4/2/97   | $250     |
| 8  | Robert McCullough | 10/23/01 | $22,000  |
| 9  | Thomas McGrath    | 1/25/00  | $1,350   |
| 10 | Matthew DiSilva   | 12/7/01  | $7,600   |

In violation of Title 18, United States Code, Sections 664 and 2.

01/11/02 12:14 FAX

Case 1:02-cr-10015-DPW    Document 1    Filed 01/16/2002    Page 19 of 32
Case 1:05-cv-13839-RCL    Document 79    Filed 02/28/2005    Page 19 of 32

## COUNTS ELEVEN TO SIXTY-SIX
(False Statements and concealment of facts in relation to documents required by ERISA)

1.    Paragraph One of Count One is realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants

GEORGE CASHMAN,
WILLIAM CARNES,
THOMAS DISILVA,
JAMES DISILVA,
WILLIAM BELANGER,
DISILVA TRANSPORTATION, INC.,
HUTCHINSON INDUSTRIES, INC., and
MANFI LEASING CORPORATION,

aided and abetted by others known and unknown to the grand jury, in documents required to be kept as part of the records of an employee welfare benefit plan, did cause false statements and representations of fact to be made, knowing the same to be false, in that the defendants and their co-conspirators submitted false documents to IBT Local 25 HSIP stating that the individuals identified below were actually employed by one of the defendant DISILVA companies thereby causing that individual and members of his family to be eligible for health benefits when said individual was not, in fact, so employed.

| Count | Ineligible Individual | Date of false document | Period of fraudulent eligibility |
|---|---|---|---|
| 11 | John Murray | 10/11/96 | 9/1/96-8/31/97 |
| 12 | Ronald Dunder | 1/97 | 3/1/97-8/31/97 |

19

01/17/02 12:18 FAX
Case 1:02-cv-10895-RCL Document 1 Filed 01/16/2002 Page 20 of 32
Case 1:02-cv-10895-RCL Document 79 Filed 02/28/2005 Page 20 of 32

| 13 | Thomas Costley | 1/97 | 3/1/97-8/31/97 |
| 14 | John McBride | 3/12/97 | 3/1/97-8/31/97 |
| 15 | Michael O'Rourke | 10/98 | 10/1/98-2/28/99 |
| 16 | Edward Reale | 7/17/97 | 9/1/97-10/31/97 |
| 17 | Alan Carr | 9/24/97 | 3/1/97-5/31/97 |
| 18 | Robert McCullough | 10/23/97 | 9/1/98-present |
| 19 | Robert McCullough | 12/17/97 | 9/1/98-present |
| 20 | Robert McCullough | 1/16/98 | 9/1/98-present |
| 21 | Robert McCullough | 3/19/98 | 9/1/98-present |
| 22 | Robert McCullough | 4/17/98 | 9/1/98-present |
| 23 | Robert McCullough | 5/31/98 | 9/1/98-present |
| 24 | Robert McCullough | 6/18/98 | 9/1/98-present |
| 25 | Robert McCullough | 7/22/98 | 9/1/98-present |
| 26 | Robert McCullough | 8/13/98 | 9/1/98-present |
| 27 | Robert McCullough | 9/23/98 | 9/1/98-present |
| 28 | Robert McCullough | 10/9/98 | 9/1/98-present |
| 29 | Robert McCullough | 11/9/98 | 9/1/98-present |
| 30 | Robert McCullough | 12/11/98 | 9/1/98-present |
| 31 | Robert McCullough | 1/20/98 | 9/1/98-present |
| 32 | Robert McCullough | 2/19/99 | 9/1/98-present |
| 33 | Robert McCullough | 3/5/99 | 9/1/98-present |
| 34 | Robert McCullough | 4/14/99 | 9/1/98-present |
| 35 | Robert McCullough | 5/14/99 | 9/1/98-present |
| 36 | Robert McCullough | 6/16/99 | 9/1/98-present |
| 37 | Robert McCullough | 7/12/99 | 9/1/98-present |
| 38 | Robert McCullough | 8/1/99 | 9/1/98-present |
| 39 | Robert McCullough | 9/7/99 | 9/1/98-present |
| 40 | Robert McCullough | 10/1/99 | 9/1/98-present |
| 41 | Robert McCullough | 11/4/99 | 9/1/98-present |
| 42 | Robert McCullough | 12/2/99 | 9/1/98-present |
| 43 | Robert McCullough | 1/3/00 | 9/1/98-present |
| 44 | Robert McCullough | 2/13/00 | 9/1/98-present |
| 45 | Robert McCullough | 3/3/00 | 9/1/98-present |
| 46 | Robert McCullough | 3/31/00 | 9/1/98-present |
| 47 | Robert McCullough | 5/4/00 | 9/1/98-present |
| 48 | Robert McCullough | 6/1/00 | 9/1/98-present |
| 49 | Robert McCullough | 6/29/00 | 9/1/98-present |
| 50 | Robert McCullough | 8/3/00 | 9/1/98-present |
| 51 | Robert McCullough | 9/1/00 | 9/1/98-present |
| 52 | Robert McCullough | 10/4/00 | 9/1/98-present |
| 53 | Robert McCullough | 11/1/00 | 9/1/98-present |
| 54 | Robert McCullough | 12/1/00 | 9/1/98-present |
| 55 | Robert McCullough | 1/3/01 | 9/1/98-present |

| | | | |
|---|---|---|---|
| 13 | Thomas Costley | 1/97 | 3/1/97-8/31/97 |
| 14 | John McBride | 3/12/97 | 3/1/97-8/31/97 |
| 15 | Michael O'Rourke | 10/98 | 10/1/98-2/28/99 |
| 16 | Edward Reale | 7/17/97 | 9/1/97-10/31/97 |
| 17 | Alan Carr | 9/24/97 | 3/1/97-5/31/97 |
| 18 | Robert McCullough | 10/23/97 | 9/1/98-present |
| 19 | Robert McCullough | 12/17/97 | 9/1/98-present |
| 20 | Robert McCullough | 1/16/98 | 9/1/98-present |
| 21 | Robert McCullough | 3/19/98 | 9/1/98-present |
| 22 | Robert McCullough | 4/17/98 | 9/1/98-present |
| 23 | Robert McCullough | 5/31/98 | 9/1/98-present |
| 24 | Robert McCullough | 6/18/98 | 9/1/98-present |
| 25 | Robert McCullough | 7/22/98 | 9/1/98-present |
| 26 | Robert McCullough | 8/13/98 | 9/1/98-present |
| 27 | Robert McCullough | 9/23/98 | 9/1/98-present |
| 28 | Robert McCullough | 10/9/98 | 9/1/98-present |
| 29 | Robert McCullough | 11/9/98 | 9/1/98-present |
| 30 | Robert McCullough | 12/11/98 | 9/1/98-present |
| 31 | Robert McCullough | 1/20/98 | 9/1/98-present |
| 32 | Robert McCullough | 2/19/99 | 9/1/98-present |
| 33 | Robert McCullough | 3/5/99 | 9/1/98-present |
| 34 | Robert McCullough | 4/14/99 | 9/1/98-present |
| 35 | Robert McCullough | 5/14/99 | 9/1/98-present |
| 36 | Robert McCullough | 6/16/99 | 9/1/98-present |
| 37 | Robert McCullough | 7/12/99 | 9/1/98-present |
| 38 | Robert McCullough | 8/1/99 | 9/1/98-present |
| 39 | Robert McCullough | 9/7/99 | 9/1/98-present |
| 40 | Robert McCullough | 10/1/99 | 9/1/98-present |
| 41 | Robert McCullough | 11/4/99 | 9/1/98-present |
| 42 | Robert McCullough | 12/2/99 | 9/1/98-present |
| 43 | Robert McCullough | 1/3/00 | 9/1/98-present |
| 44 | Robert McCullough | 2/13/00 | 9/1/98-present |
| 45 | Robert McCullough | 3/3/00 | 9/1/98-present |
| 46 | Robert McCullough | 3/31/00 | 9/1/98-present |
| 47 | Robert McCullough | 5/4/00 | 9/1/98-present |
| 48 | Robert McCullough | 6/1/00 | 9/1/98-present |
| 49 | Robert McCullough | 6/29/00 | 9/1/98-present |
| 50 | Robert McCullough | 8/3/00 | 9/1/98-present |
| 51 | Robert McCullough | 9/1/00 | 9/1/98-present |
| 52 | Robert McCullough | 10/4/00 | 9/1/98-present |
| 53 | Robert McCullough | 11/1/00 | 9/1/98-present |
| 54 | Robert McCullough | 12/1/00 | 9/1/98-present |
| 55 | Robert McCullough | 1/3/01 | 9/1/98-present |

| 56 | Thomas McGrath | 7/12/99 | 9/1/99-2/28/00 |
| 57 | Matthew DiSilva | 2/00 | 9/1/98-present |
| 58 | Matthew DiSilva | 3/10/00 | 9/1/98-present |
| 59 | Matthew DiSilva | 4/6/00 | 9/1/98-present |
| 60 | Matthew DiSilva | 5/00 | 9/1/98-present |
| 61 | Matthew DiSilva | 6/20/00 | 9/1/98-present |
| 62 | Matthew DiSilva | 7/10/00 | 9/1/98-present |
| 63 | Matthew DiSilva | 8/00 | 9/1/98-present |
| 64 | Matthew DiSilva | 9/11/00 | 9/1/98-present |
| 65 | Matthew DiSilva | 11/00 | 9/1/98-present |
| 66 | Matthew DiSilva | 12/00 | 9/1/98-present |

In violation of Title 18, United States Code, Sections 1027 and 2.

## COUNTS SIXTY-SEVEN TO ONE HUNDRED FIFTEEN
(False Statements and concealment of facts in relation to documents required by ERISA)

1.    Paragraph One of Count One is realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants

GEORGE CASHMAN,
WILLIAM CARNES,
THOMAS DISILVA,
JAMES DISILVA,
WILLIAM BELANGER,
DISILVA TRANSPORTATION, INC.,
HUTCHINSON INDUSTRIES, INC., and
MANFI LEASING CORPORATION,

aided and abetted by others known and unknown to the grand jury, in documents required to be kept as part of the records of an employee welfare benefit plan, did cause false statements and representations of fact to be made, knowing the same to be false, in that the defendants and their co-conspirators submitted false documents to the New England Teamsters and Trucking Industry Pension Fund (NETTIPF) stating that the individuals identified below were actually employed by one of the defendant DISLIVA companies when said individual was not, in fact, so employed.

| Count | Individual | Date of false document |
|-------|------------|------------------------|
| 67 | Matthew DiSilva | 2/00 |
| 68 | Matthew DiSilva | 3/10/00 |
| 69 | Matthew DiSilva | 4/6/00 |
| 70 | Matthew DiSilva | 5/00 |
| 71 | Matthew DiSilva | 6/20/00 |
| 72 | Matthew DiSilva | 7/10/00 |

22

| 73  | Matthew DiSilva     | 8/00     |
| 74  | Matthew DiSilva     | 9/00     |
| 75  | Matthew DiSilva     | 11/00    |
| 76  | Matthew DiSilva     | 12/00    |
| 77  | Richard McCullough  | 10/97    |
| 78  | Richard McCullough  | 12/97    |
| 79  | Richard McCullough  | 1/98     |
| 80  | Richard McCullough  | 2/1/98   |
| 81  | Richard McCullough  | 3/98     |
| 82  | Richard McCullough  | 4/98     |
| 83  | Richard McCullough  | 5/98     |
| 84  | Richard McCullough  | 6/98     |
| 85  | Richard McCullough  | 7/98     |
| 86  | Richard McCullough  | 8/98     |
| 87  | Richard McCullough  | 9/98     |
| 88  | Richard McCullough  | 10/98    |
| 89  | Richard McCullough  | 11/98    |
| 90  | Richard McCullough  | 12/98    |
| 91  | Richard McCullough  | 1/99     |
| 92  | Richard McCullough  | 2/99     |
| 93  | Richard McCullough  | 3/99     |
| 94  | Richard McCullough  | 4/99     |
| 95  | Richard McCullough  | 5/99     |
| 96  | Richard McCullough  | 6/99     |
| 97  | Richard McCullough  | 7/99     |
| 98  | Richard McCullough  | 8/99     |
| 99  | Richard McCullough  | 9/99     |
| 100 | Richard McCullough  | 10/99    |
| 101 | Richard McCullough  | 11/4/99  |
| 102 | Richard McCullough  | 12/6/99  |
| 103 | Richard McCullough  | 1/3/00   |
| 104 | Richard McCullough  | 2/11/00  |
| 105 | Richard McCullough  | 3/00     |
| 106 | Richard McCullough  | 4/00     |
| 107 | Richard McCullough  | 5/4/00   |
| 108 | Richard McCullough  | 6/00     |
| 109 | Richard McCullough  | 7/00     |
| 110 | Richard McCullough  | 8/00     |
| 111 | Richard McCullough  | 9/00     |
| 112 | Richard McCullough  | 10/00    |
| 113 | Richard McCullough  | 11/00    |
| 114 | Richard McCullough  | 12/00    |
| 115 | Richard McCullough  | 1/3/01   |

In violation of Title 18, United States Code, Sections 1027 and 2.

23

## COUNTS ONE HUNDRED SIXTEEN TO ONE HUNDRED SEVENTY-ONE
### (Mail fraud)

1.    Paragraph One of Count One is realleged and incorporated by reference as though fully set forth herein.

2.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendants

GEORGE CASHMAN,
WILLIAM CARNES,
THOMAS DISILVA,
JAMES DISILVA,
WILLIAM BELANGER,
DISILVA TRANSPORTATION, INC.,
HUTCHINSON INDUSTRIES, INC., and
MANFI LEASING CORPORATION,

aided and abetted by others known and unknown to the grand jury, did device a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises and did cause false documents and other matter to be placed in any post office or authorized depository for mail to be sent or delivered by the United States Postal Service for the purpose of executing such scheme or artifice in that the defendants did mail and cause to be mailed false and fictitious remittance reports and other documents designed to deceive and defraud IBT Local 25 HSIP and did thereby cause IBT Local 25 HSIP to pay claims for health care for certain IBT Local 25 members and their dependents who were ineligible for such benefits.

24

| Count | Ineligible Individual | Date of false document | Period of fraudulent eligibility |
|-------|----------------------|------------------------|----------------------------------|
| 116 | John Murray | 10/11/96 | 9/1/96-8/31/97 |
| 117 | Ronald Dunder | 1/97 | 3/1/97-8/31/97 |
| 118 | Thomas Costley | 1/97 | 3/1/97-8/31/97 |
| 119 | John McBride | 3/12/97 | 3/1/97-8/31/97 |
| 120 | Michael O'Rourke | 10/98 | 10/1/98-2/28/99 |
| 121 | Edward Reale | 7/17/97 | 9/1/97-10/31/97 |
| 122 | Alan Carr | 9/24/97 | 3/1/97-5/31/97 |
| 123 | Robert McCullough | 10/23/97 | 9/1/98-present |
| 124 | Robert McCullough | 12/17/97 | 9/1/98-present |
| 125 | Robert McCullough | 1/16/98 | 9/1/98-present |
| 126 | Robert McCullough | 3/19/98 | 9/1/98-present |
| 127 | Robert McCullough | 4/17/98 | 9/1/98-present |
| 128 | Robert McCullough | 5/31/98 | 9/1/98-present |
| 129 | Robert McCullough | 6/18/98 | 9/1/98-present |
| 130 | Robert McCullough | 7/22/98 | 9/1/98-present |
| 131 | Robert McCullough | 8/13/98 | 9/1/98-present |
| 132 | Robert McCullough | 9/23/98 | 9/1/98-present |
| 133 | Robert McCullough | 10/9/98 | 9/1/98-present |
| 134 | Robert McCullough | 11/9/98 | 9/1/98-present |
| 135 | Robert McCullough | 12/11/98 | 9/1/98-present |
| 136 | Robert McCullough | 1/20/98 | 9/1/98-present |
| 137 | Robert McCullough | 2/19/99 | 9/1/98-present |
| 138 | Robert McCullough | 3/5/99 | 9/1/98-present |
| 139 | Robert McCullough | 4/14/99 | 9/1/98-present |
| 140 | Robert McCullough | 5/14/99 | 9/1/98-present |
| 141 | Robert McCullough | 6/16/99 | 9/1/98-present |
| 142 | Robert McCullough | 7/12/99 | 9/1/98-present |
| 143 | Robert McCullough | 8/1/99 | 9/1/98-present |
| 144 | Robert McCullough | 9/7/99 | 9/1/98-present |
| 145 | Robert McCullough | 10/1/99 | 9/1/98-present |
| 146 | Robert McCullough | 11/4/99 | 9/1/98-present |
| 147 | Robert McCullough | 12/2/99 | 9/1/98-present |
| 148 | Robert McCullough | 1/3/00 | 9/1/98-present |
| 149 | Robert McCullough | 2/13/00 | 9/1/98-present |
| 150 | Robert McCullough | 3/3/00 | 9/1/98-present |

25

| 151 | Robert McCullough | 3/31/00 | 9/1/98-present |
| 152 | Robert McCullough | 5/4/00 | 9/1/98-present |
| 153 | Robert McCullough | 6/1/00 | 9/1/98-present |
| 154 | Robert McCullough | 6/29/00 | 9/1/98-present |
| 155 | Robert McCullough | 8/3/00 | 9/1/98-present |
| 156 | Robert McCullough | 9/1/00 | 9/1/98-present |
| 157 | Robert McCullough | 10/4/00 | 9/1/98-present |
| 158 | Robert McCullough | 11/1/00 | 9/1/98-present |
| 159 | Robert McCullough | 12/1/00 | 9/1/98-present |
| 160 | Robert McCullough | 1/3/01 | 9/1/98-present |
| | | | |
| 161 | Thomas McGrath | 7/12/99 | 9/1/99-2/28/00 |
| | | | |
| 162 | Matthew DiSilva | 2/00 | 9/1/00-present |
| 163 | Matthew DiSilva | 3/10/00 | 9/1/00-present |
| 164 | Matthew DiSilva | 4/6/00 | 9/1/00-present |
| 165 | Matthew DiSilva | 5/00 | 9/1/00-present |
| 166 | Matthew DiSilva | 6/20/00 | 9/1/00-present |
| 167 | Matthew DiSilva | 7/10/00 | 9/1/00-present |
| 168 | Matthew DiSilva | 8/00 | 9/1/00-present |
| 169 | Matthew DiSilva | 9/11/00 | 9/1/00-present |
| 170 | Matthew DiSilva | 11/00 | 9/1/00-present |
| 171 | Matthew DiSilva | 12/00 | |

In violation of Title 18, United States Code, SectionS 1341

and 2.

## COUNTS ONE HUNDRED SEVENTY-TWO TO
## ONE HUNDRED SEVENTY-NINE
### (Taft-Hartley Act)

1.    At times material to the allegations contained in this Count:

a.    The International Brotherhood of Teamsters, through its affiliated locals, did represent and would admit to membership persons who were employed by various companies involved in numerous industries including, but not limited to, trucking and warehousing throughout the United States.

b.    Local 25 of the International Brotherhood of Teamsters (hereinafter "IBT Local 25") was located in Charlestown, Massachusetts, and was a labor organization and employee organization engaged in an industry affecting commerce, within the meaning of Sections 152, 402, and 1003 of Title 29 of the United States Code.  IBT Local 25 represented approximately 9,000 members and had jurisdiction throughout the Greater Boston area.

c.    The IBT Local 25 Health Services and Insurance Plan (hereinafter "IBT Local 25 HSIP") was located in Charlestown, Massachusetts and provided health care benefits to approximately 20,000 participants.  These participants constituted active and retired members of IBT Local 25 and their families.  As such, it was an "employee welfare benefit plan" within the meaning of Section 1002(1) of Title 29 of the United States Code.

27

d.    The defendants HUTCHINSON INDUSTRIES, INC., MANFI
LEASING, CORP., and DISILVA TRANSPORTATION, INC. (hereinafter
"the DISILVA companies") were companies which were signatories to
collective bargaining agreements with IBT Local 25 and also to
the National Master Freight Agreement and New England
Supplemental Agreement with the International Brotherhood of
Teamsters.  The DISILVA companies were, therefore, employers
within the meaning of Title 29, United States Code, Section 186,
and were required to accurately report to IBT Local 25 HSIP the
amount of hours worked by members of IBT Local 25 and to make
contributions to IBT Local 25 HSIP accordingly.  This reporting
was generally accomplished by filing  "remittance reports" with
IBT Local 25 HSIP, and, on occasion, supplemental letters
designed to make corrections to those reports.  The defendants
HUTCHINSON INDUSTRIES and MANFI LEASING had their principal place
of business at 20 A Street in Burlington, Massachusetts.  The
defendant DISILVA TRANSPORTATION had its principal place of
business at 50 Middlesex Avenue in Somerville, Massachusetts.
Among the principal officers and stockholders of these companies
were the defendants THOMAS and JAMES DISILVA.  The defendant
WILLIAM BELANGER is the brother-in-law of the defendants THOMAS
and JAMES DISILVA and was the president and treasurer of the
defendant MANFI LEASING.

e.    The defendant GEORGE CASHMAN has been president of

IBT Local 25 since approximately 1992. The defendant WILLIAM

CARNES has been vice-president of IBT Local 25 since

approximately 1992. Both CASHMAN and CARNES were also trustees

of IBT Local 25 HSIP.

2.   In or about the dates set forth below, in the District

of Massachusetts and elsewhere, the defendants

> GEORGE CASHMAN,
> WILLIAM CARNES,
> THOMAS DISILVA,
> JAMES DISILVA,
> WILLIAM BELANGER,
> DISILVA TRANSPORTATION, INC.,
> HUTCHINSON INDUSTRIES, INC., and
> MANFI LEASING CORPORATION,

aided and abetted by others known and unknown to the grand jury,

did unlawfully pay, lend, and deliver, and agree to pay, lend,

and deliver money and other things of value in excess of $1,000

to union officials and third parties designated by said union

officials, and said union officials and third parties designated

by said union officials did request, demand, receive, and accept

and agree to receive and accept money and other things of value

in excess of $1,000 (1) under circumstances in which said union

officials represented, sought to represent, and would admit to

membership the employees of the DISILVA companies and (2) with

intent to influence said union officials in respect to their

actions, decisions, and duties as representatives of employees

and as officers and employees of a labor organization.

| Count | Ineligible Individual | Period of fraudulent eligibility |
|-------|----------------------|----------------------------------|
| 172 | John Murray | 03/01/92-08/31/97 |
| 173 | Ronald Dunder | 03/01/97-08/31/97 |
| 174 | Thomas Costley | 03/01/97-08/31/97 |
| 175 | John McBride | 03/01/97-08/31/97 |
| 176 | Michael O'Rourke | 10/01/98-02/28/99 |
| 177 | Edward Reale | 09/01/97-10/31/97 |
| 178 | Alan Carr | 03/01/97-05/31/97 |
| 179 | Thomas McGrath | 09/01/99-02/28/00 |

In violation of Title 29, United States Code, Sections 186 (a)(2), (a)(4), and (b)(1) and Title 18, United States Code, Section 2.

30

A TRUE BILL

_Jean P. Campbell_
Foreperson of the Grand Jury

_Fred M. Wyshak, J._
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS; January 16, 2002, at Worcester .

Returned into the District Court by the Grand Jurors and filed.

_D. McBrehart_
Deputy Clerk  3:28 p.m.  1/16/2002



## ROSS, DIXON & BELL L.L.P.

WASHINGTON, D.C. ■ IRVINE ■ SAN DIEGO ■ CHICAGO

2001 K STREET, N.W.
WASHINGTON, D.C. 20006-1040
(202) 662-2000
FACSIMILE (202) 662-2190

(202) 662-2015
(202) 662-2079

May 21, 2002

<u>VIA FACSIMILE & U.S. MAIL</u>

Mr. H. James Balcam
President
Corporate Risk Advisors-Managers, Inc.
Six City Square
P.O. Box 290788
Boston, Massachusetts 02129

Re: Insured:   **Teamsters Union 25 Health Services and Insurance Plan, et al.**
Policy No.: **FLP-1801948**
Claimant:  **Grand Jury Indictments against George W. Cashman and William Carnes**
Claim No.: **389.1170**

Dear Jim:

As you know, we represent Ulico Casualty Company ("Ulico") in connection with the above-referenced matter. On April 22, 2002, Tamika C. Jones of Ulico acknowledged receipt of your April 1, 2002 correspondence giving notice of a grand jury indictment against George W. Cashman and William Carnes (collectively, the "Trustees"), trustees of the Teamsters Union 25 Health Services and Insurance Plan (the "Plan"). On behalf of Ulico, this will respond further to your notice of a claim. As discussed more fully below, subject to a full reservation of its rights under Policy No. FLP-1801948 (the "Policy") and the law, as well as an appropriate allocation with National Union, Ulico will reimburse the Trustees for reasonable claim expenses incurred in defending this action.

## I.   <u>The Claim</u>

On January 17, 2002, a federal grand jury handed down an indictment against the Trustees, among others. The indictment alleges that the Trustees and the other defendants[1] conspired to embezzle, and did embezzle, funds from the Plan by submitting false documents

---

[1] The other defendants are not trustees of the Plan, nor are they insureds as otherwise defined by the policy; accordingly, there is no coverage under the Policy for them.

**ROSS, DIXON & BELL, L.L.P.**

Mr. H. James Balcam
May 21, 2002
Page 2

thereto and causing the Plan to pay health claims for ineligible members and their dependents. Moreover, the defendants allegedly committed mail fraud in connection with the conspiracy. The indictment further alleges that the defendants submitted false documents to the New England Teamsters and Trucking Industry Pension Fund ("NETTIPF"), of which the Trustees are also purported fiduciaries, stating that certain individuals were employed by one of the defendant companies when those individuals in fact were not so employed. According to the indictment, the Plan and the NETTIPF were an "employee welfare benefit plan" and an "employee pension benefit plan," respectively, within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). Finally, the indictment alleges that the defendants violated the Taft-Hartley Act by agreeing to pay in excess of $1,000 to union officials, or third parties designated by them, in order to influence those officials.

## II.    The Policy

Ulico issued Trustee and Fiduciary Liability Policy No. FLP-1801948 (the "Policy") for the policy period from January 1, 2002 through January 1, 2003. The Policy provides a limit of liability of $3 million, each claim and in the aggregate, and is subject to no deductible.

The Policy provides coverage for "all loss for which the insured becomes legally obligated to pay resulting from any claim first made against the insured during the policy period ... which results from a wrongful act." Policy, Section I. Insured includes any natural person serving as a past, present or future trustee of a trust or plan, while acting in his or her capacity as such. Policy, Section IX (L). Wrongful Act is defined in the Policy to mean "[a]ny actual or alleged error or omission or breach of duty committed or alleged to have been committed by the insured, either jointly or severally, in the discharge of fiduciary duties, responsibilities or obligations as imposed upon fiduciaries of any trust or plan by ERISA." Policy, Section IX (U).

The Policy's definition of Loss includes "claim expenses incurred in the investigation, defense, settlement or appeal of a claim." Policy, Section IX (N). Claim includes "[a] criminal proceeding commenced by the return of an indictment." Policy, Section IX (C). Claim expenses is defined in Section IX (D) of the Policy to mean "reasonable and necessary fees and expenses incurred in the investigation, defense, settlement and appeal of a claim."

Accordingly, the Trustees' reasonable defense costs incurred in connection with the defense of that portion of the indictment relating to the Plan appear to be reimbursable under the Policy. In this regard, please note that we have enclosed a copy of Ulico's Litigation Guidelines. It is necessary for the Trustees' defense counsel to follow these Guidelines if the Trustees wish to be reimbursed for their attorneys' fees in defending the lawsuit. Please also provide us with defense counsel's hourly rates, as well as any defense costs incurred to date for which the Trustees will be seeking reimbursement.

Although Ulico will reimburse the Trustees for their reasonable claims expenses in defending the indictment, Ulico notes several Policy provisions that may limit or preclude

**ROSS, DIXON & BELL, L.L.P.**

Mr. H. James Balcam
May 21, 2002
Page 3

coverage for this matter. Ulico also notes that, in the event that one or more Policy provisions apply to preclude coverage, the Policy requires the insureds to repay Ulico for the claims expenses advanced. <u>See</u> Policy, Section II ("Ulico will advance . . . claims expenses . . . subject to the insureds' agreement to repay such claims expenses in the event and to the extent that there is no coverage for such claims under this policy.").

First, Section IV (A)(2) may preclude coverage for this claim. Section IV (A)(2)[2] excludes coverage for:

> Any deliberately dishonest, fraudulent or criminal acts or any willful violation of any statute or regulation by the insured; provided, however, that this exclusion shall not apply to such claim, or to Ulico's obligation to pay, reimburse or advance claims expenses regarding such claim, until a judgment or other final adjudication adverse to the insured shall establish such acts and/or violations.

If a final judgment or adjudication establishes that either of the Trustees engaged in any of the conduct referenced in Section IV (A)(2), there would be no coverage for that Trustee. Accordingly, Ulico reserves its rights to deny coverage pursuant to this Policy provision.

Second, Section IV (A)(8) may also preclude coverage for this claim. This Section provides that Ulico shall not be liable for loss on account of any claim made against an insured based upon, arising from or in consequence of:

> Any insured having gained, in fact, any personal profit, remuneration or advantage to which such insured was not legally entitled, or for the return by the insured of any remuneration paid to or received by such insured if payment or receipt of such remuneration was in violation of law.

As noted above, the indictment alleges that the defendants paid unnamed union officials in excess of $1,000 in order to influence those officials. The unnamed "union officials" may refer to the Trustees; accordingly, Ulico must reserve its rights on the basis of this Policy provision.

Third, the indictment alleges violations of the Taft-Hartley Act. These alleged violations do not involve the discharge of fiduciary duties and, therefore, do not constitute wrongful acts as defined by the Policy. Accordingly, Ulico must reserve its rights on this basis.

Fourth, please provide copies of any other insurance policies that may respond to this claim, including but not limited to policies that may have been issued by National Union, in

---

[2] The Exclusions contained in Section IV of the Policy are subject to severability. <u>See</u> Policy, Section V ("no act or omission of one insured shall be imputed to any other insured for the purpose of determining the applicability of any exclusion").

**ROSS, DIXON & BELL, L.L.P.**

Mr. H. James Balcam
May 21, 2002
Page 4

addition to copies of all correspondence between the Plan and any insurance company regarding this matter. We understand that National Union provides insurance coverage for the Trustees in their capacities as trustees and/or fiduciaries of NETTIPF. We also understand that National Union has orally agreed to advance defense costs in this matter, and we will contact them shortly to discuss a proper allocation. In this regard, please note that Section II of the Policy provides that:

> If both loss covered by this policy and loss not covered by this policy are incurred, either because a claim against an insured includes both covered and uncovered matters or because a claim is made against both an insured and others, the insureds and Ulico shall allocate such amount between covered loss and uncovered loss based upon the relative legal exposures of such parties to such matters.

Please also note that Section VII (L) of the Policy provides that the Policy "shall apply only as excess insurance over, and shall not contribute with, any other valid and collectible insurance available to the insured, unless such other insurance is specifically in excess of this policy."

Fifth, Section IV (B) of the Policy provides that Ulico shall not be liable for that part of loss, other than claims expenses, which constitute fines or penalties. Because the indictment alleges violations of certain statutes which allow for the imposition of fines, Ulico must reserve its rights on this basis.

## III.   Conclusion

Ulico reserves all its rights in connection with this matter under the terms, covenants, conditions, provisions and additions to the Policy. Our further investigation, communications, and requests for information, documentation or status should neither constitute, nor be construed as waiving or altering in any way any of the rights that Ulico has herein.

We are writing to you based on your letters to Ulico dated April 1, 2002, identifying Corporate Risk Advisors-Managers, Inc., as consultants to the Plan. We assume that you will pass this letter along to the insureds and their respective defense counsel. If our assumption is incorrect, please let us know at your earliest convenience.

If you or the insureds have any questions regarding Ulico's position or if you disagree with the above analysis, please do not hesitate to contact us.

**ROSS, DIXON & BELL, L.L.P.**

Mr. H. James Balcam
May 21, 2002
Page 5

Sincerely,

ROSS, DIXON & BELL, L.L.P.

By _Jenni R. Wallace_

David M. Gische
Jenni R. Wallace

cc:    Sheila K. Bowers